Emeary MORELAND, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 5881.

United States Court of Appeals Tenth Circuit.

Sept. 26, 1959.

Marilyn Cimino, Colorado Springs, Colo., for appellant.

Jack K. Anderson, Asst. U. S. Atty., Denver, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Moreland was charged by information with a violation of 18 U.S.C. § 2114. The information charged that on September 28, 1957, in the City of Denver, District of Colorado, Moreland did rob and steal money and property of the United States from William H. Coker, who was lawfully in charge, control and custody thereof, at a postal contract station in Denver, Colorado, and that in effecting and attempting to effect such robbery Moreland did put the life of Coker in jeopardy by the use of a dangerous weapon.

On November 29, 1957, Moreland appeared in person and by counsel of his own choosing, was duly arraigned and entered a plea of not guilty. Thereafter, he was tried, convicted and sentenced and has appealed.

At the trial it was stipulated by counsel for the United States and for Moreland that on September 28, 1957, a postal contract station was located at 2645 Welton Street in Denver, Colorado; that Coker was the contractor and in charge thereof; that at that time and place $34.23 in cash, 188 blank United States postal money orders and a money order validating stamp, property of the United States, were taken by an individual through the use of a dangerous weapon, which placed Coker's life in danger.

The facts with respect to the robbery, as charged in the information, were testified to by Coker at the trial and he also identified Moreland and testified that he committed the robbery.

Moreland testified in his own behalf at the trial. In response to questions by his counsel, Moreland testified that he had been convicted of a felony on two occasions; once for burglary in Tulsa, Oklahoma, in 1948, and once for larceny in Wichita, Kansas, in 1952, and that neither of such felonies involved armed robbery or the use of a gun.

On cross-examination the Assistant United States Attorney asked Moreland whether the original charge of the felony to which he pleaded guilty in 1952 was not armed robbery, the Assistant United States Attorney having information that such was the original charge, but that Moreland was permitted to plead guilty to a lesser offense. When the question was asked, counsel for Moreland asked leave to approach the bench. Leave was granted and counsel for Moreland stated that the question was improper. The court, in effect, told both counsel for Moreland and the United States that the question was improper. Counsel for Moreland then stated that he would like to see the witness respond to the question before he made a motion. The court said, "Then you should have let him respond." Counsel for Moreland stated he would have to make the objection. The court then stated, "Then I will sustain it and he won't answer." Counsel for Moreland then stated, "I haven't objected to the question; I asked permission to approach the bench, and if there is no ob--

jection the Court can't strike it. I will let the question be answered." The Assistant United States Attorney then asked Moreland whether he could answer the question. Moreland answered, "No." He may have intended to deny that the original charge involved armed robbery, or he may have intended to state that he could not answer the question. No effort was made to clarify his answer. Counsel for Moreland then moved for a mistrial. The court then stated:

"* * * The Court indicated immediately prior to this time when counsel came to the bench that if an objection were made he would not permit the answer. Knowing that, counsel went ahead and didn't make any objection and permitted the witness to answer, so now the only thing left for the Court to do is to merely instruct the jury to disregard it and proceed with the trial. The motion for mistrial is denied."

The court then properly instructed the jury that the question was improper and that they should completely disregard the question and that the question should carry no implication whatsoever.

In his direct examination at the trial Moreland specifically denied that he committed the robbery. He also undertook to establish an alibi.

Two police officers of the City and County of Denver took Moreland from the City Jail to the Post Office Building for arraignment before the United States Commissioner and then returned him to the City Jail. On the cross-examination of the defendant he was asked by the Assistant United States Attorney whether he had a conversation with the police officers at that time and he answered, in effect, in the affirmative. Moreland was then asked, "I will ask you to state whether or not the officers stated to you in the automobile driving back there, 'Moreland, since you have been faced and accused and identified by Mr. Coker you haven't admitted or denied this?' Did they make that statement to you?"

Over objection he was permitted to answer and he answered that he did not remember. He was then asked whether he did not state to the officers, "I won't admit nor I won't deny this, but what kind of a deal could I make?" He was then asked whether, in response to that part of his answer, the officers did not state to him:

"We don't make deals; you are a federal prisoner. When you went before the Judge or the Commissioner you are no longer our prisoner. Anything you say will have to be with Mr. Murphy, although if you could get the checks back or tell us who had them and cooperate I am sure it would be remembered."

To that question Moreland answered, "No, it wasn't no statement to me like that in those words to me."

He was then asked if he did not say to the officers, "What does this sentence carry?" To that question he answered that he did not remember.

One of the police officers, Glen P. Snyder, testified in rebuttal for the United States that he took Moreland from the City Jail to the Post Office Building for arraignment and after arraignment returned Moreland to the City Jail and that he was accompanied by Officer Hertzog and that he and the other officer had a conversation with Moreland while they were returning him to the City Jail.

Snyder further testified:

"A. Near 15th and Champa Streets before any conversation occurred in the car after we had left the post office, near that intersection, Mr. Moreland said, '$25,000 bond, damn, that's a lot of money.' We told him at that time it was our understanding that the money orders could be made out for $100 apiece. The total value of $18,700 worth of money orders could be made out; it could be raised to that figure. If the figure of $18,700 had been made and cashed it wouldn't be too much balance from $25,000. We said, 'Since you have been faced

by Mr. Coker you haven't admitted nor denied this.'

"He said, 'I am not admitting it or denying it, but what kind of a deal can I make?'

"Q. Who said that? A. Mr. Moreland. We drove on toward the building and we told him if the checks could be recovered it would be remembered, working out something that they could help him and help us get this case solved. He said, 'What kind of a sentence could I get?' and we explained to him that he was a federal prisoner, that we weren't going to give him any kind of answer because I didn't know, and I am sure that Detective Hertzog didn't know what the sentence was for an armed robbery of a post office."

Moreland asserts that the trial court erred in denying his motion for a mistrial, predicated on the question asked by the Assistant United States Attorney on the cross-examination of Moreland, as to whether the original charge of the felony to which he pleaded guilty in 1952 was not armed robbery.

■ Failure to make proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable or to move to strike it out after its admission ordinarily constitutes a waiver of the right to object and cures the error, if any, resulting from the admission of such evidence.[1]

■ Here, counsel for Moreland not only failed to object to the question, but after the court indicated that the question was improper and that he would sustain an objection thereto, refused to object and insisted that the witness be permitted to answer the question, obviously hoping to lay a predicate for a motion for a mistrial. The action of counsel effectively waived any objection to the question and if any harm was done by the question it was entirely cured by the instruction of the court that the jury should disregard the question and should not educe any implication whatever from the question.

■ While Moreland only had testified that the offenses of which he was convicted did not involve armed robbery, the implication was that he had not used a gun in the commission of such offenses. The question in the form it was asked was improper, but because of the scope of the direct examination it would have been proper for the Assistant United States Attorney to have asked the defendant whether he used a gun in the commission of the offenses of which he was convicted. The propounding of the question did not, in our opinion, constitute plain error, which affected substantial rights of Moreland or seriously prejudiced his rights. Cf. Lewis v. United States, 10 Cir., 92 F.2d 952.

■ The statements made by Moreland to the police officers while they were taking him back to the City Jail after arraignment before the United States Commissioner tended to incriminate him and were admissible as original evidence if they were made voluntarily.[2] In the instant case the conversation between Moreland and the officers, in which such statements were made, was opened by Moreland. It seems quite clear that they were not induced by threats, promises, or coercion of any character and were freely and voluntarily made. We conclude that the court did not err in admitting such statements.

We have examined other grounds for reversal urged in Moreland's brief. They are clearly without merit and do not warrant extended discussion.

Affirmed.

1. O'Dell v. United States, 10 Cir., 251 F.2d 704, 707, 708; Brennan v. United States, 8 Cir., 240 F.2d 253, 262; Anthony v. United States, 9 Cir., 256 F. 2d 50, 53, 54; 23 C.J.S. Criminal Law § 1078, p. 512.

2. O'Neill v. United States, 8 Cir., 19 F.2d 322, 325; 22 C.J.S. Criminal Law §§ 730, 731, 732, pp. 1243–1253.