# Richmond

MARTIN THOMAS SMITH v. COMMONWEALTH OF VIRGINIA.

October 10, 1966.

Record No. 6218.

Present, All the Justices.

*Floyd Caldwell Bagley* for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Martin Thomas Smith was, on July 27, 1964, indicted in the Circuit Court of the County of Prince William for the murder of Henry Blaine Moore. The indictment was in the statutory short form, Virginia Code, § 19.1-166, 1960 Repl. Vol. Represented by counsel of his own choosing, he was tried on November 24 and 25, 1964, before a jury, on a plea of not guilty. The jury found him guilty of voluntary manslaughter, and fixed his punishment at two years confinement in the State Penitentiary. Sentence was imposed accordingly. We granted a writ of error to review the judgment.

The facts are not without conflict; but, in view of the verdict of the jury, they will be summarized in the light most favorable to the Commonwealth.

On the afternoon of Friday, June 12, 1964, Henry Blaine Moore, a truck driver, and his friend, Robert Wayne Lesheski, a truck driver, met at the plant of Moore's employer at Springfield, Fairfax County, Virginia. They there began drinking beer and whiskey, and later went to Dumfries, Virginia, where they continued drinking in a restaurant. Leaving Dumfries, they "rode around a while," drinking still more. After each had consumed eight bottles of beer and one-half pint of whiskey, they proceeded in an automobile, driven by Lesheski, to the home of Moore in the Quantico-Triangle Trailer Court near Triangle, Virginia. Lesheski said that he was "feeling pretty good," and that Moore was "drunk." Moore told Lesheski that he wanted to see someone before he reached home. Upon their arrival at the trailer court, Lesheski parked his car not far from a

trailer occupied by Martin Thomas Smith and his family. Moore, his wife and child occupied a trailer one lot removed from the trailer of Smith. As Moore and Lesheski arrived, Smith was observed walking towards his trailer carrying a bucket of deer meat or deer skin, which he had just obtained from an automobile parked in front of his home. Moore got out of Lesheski's car, approached Smith, and said to the latter: "You took my daughter's ball." Smith denied taking the ball. After a few words between the two, Moore struck Smith and they "tussled" with each other for a few moments. Lesheski said he undertook to part them, but unable to do so returned to his car, and falsely announced that he had a gun. Moore and Smith then broke off their affray. Moore went back across the street to Lesheski's car, and Smith went to his home. Smith remained in his trailer ten or more minutes, during which time he changed his clothes, put on his socks and shoes, and told his wife to take their children to the rear portion of their trailer and remain there. In the meantime, Moore, standing near Lesheski's car across the street, loudly cursed, abused and threatened death to Smith. Smith heard the abuse and threats. He knew that Moore was drunk.

While in his trailer home, Smith, who had served in the U. S. Marine Corps for several years, armed himself with a large hunting knife, 10½ inches in length, with a 5½ inch blade, of the type used by Marines for close combat. He had received hand to hand combat training, and had instructed others as to the use of a knife in close combat. Smith also armed himself with a bullwhip, and then went out into his yard towards Moore, who, he said, was talking "loud and boisterous and acting like a drunk." Smith cracked his bullwhip, and then, seeing that Moore was unarmed, threw the whip aside. Smith said to Moore: "I'm ready for you, come and get me;" "Now come over here, and I will cut your damn guts out;" and "If you want to fight with a knife, I have one too." Moore, who was about sixty feet distant from the corner of Smith's trailer, in response, staggered across the street towards Smith with "his arms stretched out." The two met in the front part of Smith's yard, and "started tangling together." They embraced each other in what witnesses said was a "bear hug," and Smith, with his arms around Moore, held his knife in his right hand.

Lesheski came to them, seeing that Smith had a knife, tried to stop the fight, reached for the knife, and was himself stabbed in the left side by Smith.

In the fracas, Smith stabbed Moore in the latter's back, beneath the right twelfth rib, a penetrating wound two inches in length. Other bruises, cuts and abrasions of a more or less superficial nature were inflicted on the chest and forehead of Moore.

Moore fell to the ground when he was stabbed in his back, the fight ended, Moore got up, went to his trailer, got his gun, and returned to a spot nearby and collapsed. He was placed in a chair until an ambulance removed him to a hospital, and died on June 17, 1964, as a result of the wound in his back.

Upon return of the jury's verdict, "nothing being offered or alleged in delay of judgment," Smith was, on November 25, 1964, sentenced to confinement in the penitentiary for a period of two years. No objection or exception was taken to the entry of an order accordingly. No motion was made to set aside the verdict, to grant a new trial, to suspend imposition of sentence, or suspend the sentence.

Subsequently, on December 10, 1964, the tenth day after final judgment, Smith, by counsel, filed with the Clerk of the Circuit Court of Prince William County a notice in writing requesting that this case be placed on the docket to be called on December 16, 1964, for the following:

"1. Motion to set aside verdict and judgment, and for new trial.
"2. Motion for transcript of record under Va. Code Sec. 17-30.1.
"3. Request for time to apply for writ of error, Va. Code Sec. 19.1-281."

Attached to the above notice was an affidavit of Smith "of his intention to appeal" from his conviction, and that he was financially unable to bear the expense of a copy of a transcript of the evidence for an appeal.

On December 16, 1964, Smith also filed with the clerk of the court a motion, in writing, praying the court to grant him a new trial upon the charge of voluntary manslaughter upon the following grounds:

"1. That the verdict and judgment thereon are contrary to the law and the evidence.

"2. That the comments of the attorney for the Commonwealth in closing argument were highly prejudicial to the rights of Defendant wherein the scope of counsel for Defendant's argument was exceeded and the Commonwealth Attorney's opinion of Defendant's guilt stated and comments made upon matters not in evidence.

"3. Such other grounds as may be revealed after perusal of the record.

"WHEREFORE, Defendant prays that motion be held under advisement pending transcription of the record of trial in this matter to the end that the record may be reviewed prior to decision hereupon, * * *."

On December 30, 1964, Honorable Bernard F. Jennings, presiding in the trial court, entered, at the request of Smith, an order reciting that: "This matter came on to be heard on December 16, 1964, upon motion of counsel for defendant * * *;" and, "It appearing to the Court from the affidavit of defendant and other evidence that defendant intends to seek an appeal * * *, and is unable to pay the cost of a transcript of the evidence for an appeal; it is ordered that the evidence be transcribed for such appeal" at the expense of the Commonwealth.

The order further directed that Smith's "MOTION FOR NEW TRIAL filed on December 16, 1964 be continued to January 5, 1965, or as soon before or after such date as may be convenient to allow Judge B. Calvin Van Dyck, who presided at trial of this matter, to hear the same;" and "that Defendant's motion for time to appeal be similarly continued."

On January 12, 1965, Judge Van Dyck, after having heard the argument of counsel for Smith and the Commonwealth's Attorney, denied the motion for a new trial, "on the grounds that more than twenty-one days have elapsed since the imposition of sentence, and that it is now beyond the jurisdiction of the Court to modify its order imposing sentence on the 25th day of November, 1964." The defendant, by counsel, excepted.

The record contains the following "Memorandum of Incidents of the Trial," signed by the trial judge on February 1, 1965:

"Because of the serious illness of the reporter serving the present trial, it was impossible to get a transcript of the closing argument of counsel and the argument on instructions within the required time. Ground 4 of the notice of appeal and assignment of error relates to matter occurring during such final argument and, in this connection, it is the combined recollection of court and counsel that the following took place with respect to this ground of the assignment error:

"Mr. H. Selwyn Smith, attorney for the Commonwealth, stated to the jury in his rebuttal argument that in his opinion the defendant was guilty, to which statement Mr. Bagley objected and after which

objection Mr. Smith stated to the jury that they had been instructed to decide the case upon the evidence and not upon his or Mr. Bagley's opinion, but that he believed that the evidence produced by the Commonwealth justified his opinion and, he would hope, theirs.

"Subsequently, attorney for the Commonwealth began to read from instructions which had previously been read by the court, at which time Mr. Bagley objected upon the grounds that the Commonwealth attorney was exceeding the scope of defendant's counsel's argument, at which time the Commonwealth attorney ceased to read and concluded his argument.

"The court and counsel further agree that during the argument on instructions Mr. Bagley, counsel for defendant, objected and excepted to the granting of the instructions that were granted for the Commonwealth, and further objected and excepted to any and all instructions offered by the defendant which were refused or which were not granted in the form offered."

In his notice of appeal filed on January 22, 1965, Smith made the following asignments of error:

(1) "That the court erred in admitting photographs of the corpse of the deceased;"

(2) That the verdict of the jury was contrary to the law and the evidence;

(3) "That the court erred in refusing to hear defendant's motion for a new trial filed December 16, 1964;

(4) "That the court erred in permitting the Attorney for the Commonwealth to excede the scope of defendant's argument, and give his opinion of defendant's guilt;" and

(5) That the court erred in the giving and in the refusing of instructions.

We find no merit in any of the assignments for the reasons herein below set out. They will be considered in the order named.

I

It appears that when three photographs of the body of Moore were first offered in evidence, counsel for Smith objected to their introduction on the ground that the witness, Dr. A. S. Lineberger, who performed an autopsy on the body, did not know the deceased. The objection was sustained. Later, Mrs. Moore, the widow of the deceased, identified the pictures as those of her husband when they were

offered to show the location, nature and condition of the wounds inflicted upon Moore. No objection to their introduction was made. The photographs gave a more accurate description of the location, nature and the appearance of the wounds than a mere verbal description. *Martin* v. *Commonwealth*, 184 Va. 1009, 37 S. E. 2d 43; *Timmons* v. *Commonwealth*, 204 Va. 205, 129 S. E. 2d 697. The question of their admissibility rested in the sound discretion of the trial court, and that discretion was not abused. *Enoch* v. *Commonwealth*, 141 Va. 411, 438, 126 S. E. 222.

## II

The evidence shows clearly that Smith, after his first conflict with Moore, went to his home, remained there ten minutes or more, changed his clothes, armed himself with a knife and a bullwhip, went out into his front yard, and then challenged or invited a man he knew to be drunk to engage in a fight with him. Moore was not then committing any overt act which indicated any immediate danger to Smith. While the language and threats of Moore were provocative, they did not justify the conduct of Smith. Apparently, the latter, upon reflection during his stay in his trailer, became desirous of avenging the attack made upon him earlier by Moore, and then sallied forth with that purpose in mind.

Smith, in his testimony, did not contend that the stabbing of Moore was accidental. He could hardly have done so, in view of his claim that the stabbing was in self-defense. There was no evidence otherwise that the stabbing was accidental. On the other hand, the evidence indicates that it was deliberate and intentional. Indeed, it was sufficient to have justified a verdict of guilt of a higher degree of homicide than voluntary manslaughter. Cf. *Callahan* v. *Commonwealth*, 192 Va. 26, 63 S. E. 2d 617.

## III

Rule of Court 1:9, dealing with general practice and procedure, provides:

"All final judgments, orders and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified or vacated for twenty-one (21) days after the date of entry, and no longer. But notwithstanding the finality of the judgment, in a criminal case the trial court may postpone execution of the

sentence in order to give the accused an opportunity to apply for a writ of error and supersedeas."

Rule of Court 3:21, relating to "Practice and Procedure in Actions at Law," is consistent with Rule 1:9. It provides:

"All final judgments, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified or vacated for twenty-one (21) days after the date of entry, and no longer."

Here, there was first a mere request that the clerk of court place the case "upon the docket to be called Wednesday, December 16, 1964." Next, on December 16, 1964, the twenty-first day after final judgment, defendant filed his motion for a new trial with the clerk of court with the request that the motion be held in abeyance pending transcription of the record.

No action of record with regard to the motion was taken by the court on December 16, 1964. Thereafter, on December 30, 1964, the court entered an order granting the requested continuance of a hearing of the motion. No action was taken on the merits of the motion for a new trial. Thus, no order changing or modifying the final judgment was entered during the twenty-one days immediately after final judgment, and none thereafter.

"A final judgment or sentence valid in a court of original entry is final and conclusive upon all courts (except on appeal) after the court pronouncing judgment has lost jurisdiction of the case." *Smith* v. *Commonwealth,* 195 Va. 297, 301, 77 S. E. 2d 860.

The court's failure to hear the motion for a new trial on December 16, 1964, and its denial of the motion on January 12, 1965, had the same effect as overruling the motion. It did not, however, interfere with defendant's right of appeal to this Court, and this writ of error was granted.

The court did suspend the execution of the sentence and granted bail to defendant, in order that he might assist in preparing this appeal.

In the civil case of *Harvey* v. *Telephone Company,* 198 Va. 213, 218, 93 S. E. 2d 309, the late Chief Justice Edward W. Hudgins, in construing the language of Rule 3:21, said this:

"Formerly the statute, § 17-31, now Rules of Court, § 3:21, prescribed the time within which a final judgment shall remain in the breast or under the control of the trial court. Neither the statute nor the Rule of Court contemplates that the mere filing or lodging of a paper with the clerk would have the effect of extending the time pre-

scribed. The recital of the dates of the different steps taken by plaintiff in this case in an attempt to extend the time of the judgment becoming final shows the necessity of strict compliance with the rule, otherwise a judgment debtor would have the power, by the mere lodging of a motion with the clerk, to postpone indefinitely the time in which a judgment would become final, and this without giving bond or security for the protection of the judgment creditor."

## IV

It is improper for prosecuting counsel to express his personal belief or opinion as to the guilt of an accused. He may argue that the evidence shows that an accused is guilty; but his argument must be based on a statement of the evidence, and not on his opinion. *Seay v. Commonwealth*, 135 Va. 737, 115 S. E. 574; *Edens v. Commonwealth*, 142 Va. 609, 128 S. E. 555; 23A C. J. S., Criminal Law, § 1104, page 195. Here, upon objection being made to the remarks of the Commonwealth's Attorney, the latter told the jury that they must decide the case upon the evidence, and not upon the opinion of himself or of defendant's counsel. There was no further objection on this point, and no motion was made for a mistrial. The trial judge did not abuse his discretion in failing to declare a mistrial on his own motion, in the absence of a showing of prejudice to the defendant.

## V

Twelve instructions were granted at the request of the Commonwealth, and ten at the request of the defendant. They take up almost six pages of the printed record. They fully, fairly and correctly define all degrees of homicide, murder or manslaughter, and the right of self-defense, which latter right was principally relied upon by defendant upon his trial in the lower court.

Other than in the "Memorandum of Incidents of the Trial," the record contains no objection or exception to any of the instructions granted or refused. Rule of Court 1:8. In the assignments of error, there is merely the general statement that some instructions which were given should have been refused, and some which were refused should have been granted. In his brief, for the first time, defendant notes specific grounds for his objections to three instructions granted and to one refused; but upon consideration, we find no merit in the objections. The instructions were fair and not prejudicial to

the rights of defendant. They were as favorable to him as he had a right to expect. Those refused were either covered by others given, or were not justified under the evidence presented.

Smith has had a fair and impartial trial before an unbiased court and jury. The evidence amply supports the verdict, and the punishment imposed indicates that the jury gave consideration to the circumstances which confronted the defendant.

For the reasons stated, the judgment is affirmed.

*Affirmed.*