**Benjamin A. DeCHRISTOFORO, Petitioner, Appellant,**

v.

**Robert H. DONNELLY, Respondent, Appellee.**

No. 72–1338.

United States Court of Appeals, First Circuit.

Argued Jan. 5, 1973.

Decided Feb. 22, 1973.

Paul T. Smith, Boston, Mass., with whom Harvey R. Peters and Jeffrey M. Smith, Boston, Mass., were on brief, for petitioner, appellant.

David A. Mills, Asst. Atty. Gen., Chief, Appellate Section, with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., and William T. Harrod, III, Winthrop, Mass., were on brief, for respondent, appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

At four o'clock on the morning on April 18, 1967, the police drew alongside a car that had stopped in a residential area to question the four occupants. The driver, one Gagliardi, was questioned first. He left to enter a house, which he incorrectly asserted to be his own. Petitioner DeChristoforo was questioned next. After he had left the scene, ostensibly to join Gagliardi, the police discovered that the passenger in the front seat was not asleep, as they had been told, but dead. He had been shot in the head by a revolver found on the floor behind him in front of the fourth passenger, Oreto, and in the left side, next to the driver, by a revolver later found buried in the vicinity. To complete the picture, a fully loaded derringer—a small weapon of low power— was found on the floor in front of the seat behind the driver, where petitioner had been sitting. Further facts, to the extent relevant, will be mentioned later. Others may be found in the opinion of the Supreme Judicial Court dismissing petitioner's appeal. Commonwealth v. DeChristoforo, 1971 Mass.A.S. 1707, 277 N.E.2d 100.

Petitioner's absence to seek Gagliardi was extended for some fifteen months, when petitioner was discovered to have been living at his grandmother's house. Eventually he, together with Gagliardi, Oreto having previously pleaded to second degree murder and a weapons charge, were brought to trial. At the close of the evidence, in the absence of the jury, Gagliardi pleaded guilty to murder in the second degree. The trial continued and petitioner was found guilty of first-degree murder, but with a recommendation that the death penalty be not imposed. His appeal was submitted to the full Court, but failed by a

vote of 5–2. Thereafter petitioner sought a writ of habeas corpus in the district court. The case is here, on the state court transcript, on an appeal from an order dismissing the petition.

We are concerned solely with what petitioner claims was improper closing argument by the prosecuting attorney. The Massachusetts court was unanimous that the argument was improper, but divided on the issue of its prejudicial effect. The objectionable statements fall into two categories: the prosecutor's forceful expression of his personal belief in petitioner's guilt,[1] and his opinion that even petitioner expected a conviction.[2]

■ The impropriety of a prosecutor adding the weight of his personal opinion of a defendant's guilt to the scales of justice is so basic, and so frequently commented upon,[3] that it is difficult today to think that even the most incompetent could do so innocently, unless possibly in a mild form that might be argued to be unintentional. The breach in this case, n.1, ante, was unmistakable and clear. Judicial censure, which might have softened the impact, was neither immediately, nor even ultimately, supplied. The Commonwealth, however, urges us to have in mind that our review is the narrow one of due process, and not the broad exercise of supervisory power that we would possess in regard to our own trial court. We realize this, and we are not surprised that research discloses no authority holding that personal endorsement of his case falling short of suggesting the prosecutor has access to undisclosed evidence, is of sufficient significance to violate due process. While, as the Massachusetts court pointed out, even a mere statement of opinion is unethical, a fact the jury unfortunately was not told, at least the jury knows that the prosecutor is an advocate and it may be expected, to some degree, to discount such remarks as seller's talk. We turn, accordingly, to defendant's second complaint, which we regard as more serious.

We have noted that when Gagliardi pleaded guilty and disappeared from the trial the jury was informed of the plea (although not of its precise character).[4]

1. "I honestly and sincerely believe that there is no doubt in this case; none whatsoever."

2. "I quite frankly think that they [petitioner and his counsel] hope you find him guilty of something a little less than first degree murder."

3. The Massachusetts court cited, "Am. Bar Assn. Canons of Professional Ethics, Canon 15. Commonwealth v. Mercier, 257 Mass. 353, 376–377, [153 N.E. 834]. Commonwealth v. Cooper, 264 Mass. 368, 374, [162 N.E. 729, 333]. Greenberg v. United States, 280 F.2d 472, 474–475 (1st Cir.). Harris v. United States, [131 U.S.App.D.C. 105] 402 F.2d 656, 658–659." 1971 Mass.A.S. at 1711, 277 N.E. 2d at 105. To this we might add United States v. Cotter, 1 Cir., 1970, 425 F.2d 450. For cases reversing at least partly in reliance on this ground, see United States v. Puco, 2 Cir., 1971, 436 F.2d 761; Hall v. United States, 5 Cir., 1969, 419 F. 2d 582; Adams v. State, 1967, 280 Ala. 678, 198 So.2d 255; People v. Alverson. 1964, 60 Cal.2d 803, 36 Cal.Rptr. 479, 388 P.2d 711; People v. Fuerbach, 1966, 66 Ill.App.2d 452, 214 N.E.2d 330; Wamsley v. State, 1960, 171 Neb. 197, 106 N.W.2d 22; People v. Reimann, 1943, 266 App.Div. 505, 42 N.Y.S.2d 599. For cases upholding the principle but refusing to reverse on the particular facts, see United States v. Grooms, 7 Cir., 1972, 454 F.2d 1308; United States v. Jones, 1970, 140 U.S.App.D.C. 70, 433 F.2d 1107; Devine v. United States, 10 Cir., 1968, 403 F.2d 93; State v. Abeny, 1968, 103 Ariz. 294, 440 P.2d 914; Cokley v. People, 1969, 168 Colo. 52, 449 P.2d 824; Smith v. Commonwealth, 1966, 207 Va. 459, 150 S. E.2d 545; Embry v. State, 1970, 46 Wis. 2d 151, 174 N.W.2d 521.

4. Although it is not vital to the case, the inference that it was a plea to murder in the second degree seems inescapable. In the light of all the evidence and the fact that the victim had been shot three times in the ribs next to Gagliardi, with no significant defense, it would be difficult to think that the Commonwealth would accept a plea of manslaughter. Conversely, the jury could hardly think that Gagliardi would plead, after going through a trial, without some inducement. The most obvious one is the acceptance of a plea to murder in the second degree.

While this may be a questionable practice, the Commonwealth says with some force that the fact of the plea, standing alone, was not detrimental and might even be said to be beneficial to petitioner, particularly where the Commonwealth argued to the jury that Oreto and Gagliardi had been the ones to fire the fatal shots, so that petitioner was, at the most, an accomplice. Fairly obviously, the jury was going to believe that at least one of the persons in the car was guilty of murder. Possibly Gagliardi's plea increased petitioner's chances of being selected out. However, from this perhaps benign, and possibly helpful factor, the prosecuting attorney turned Gagliardi's plea into a telling stroke against petitioner.

A jury must always wonder to some extent why a defendant has not pleaded. When Gagliardi pleaded, drawing its attention to the matter at this important juncture, we may ask what conclusion the jury drew with respect to petitioner. There are only two alternatives. A defendant whose case reaches the jury has either not sought to plead, or he has sought to unsuccessfully. Equally, a jury must know that if he has not sought to plead, either he did not wish to plead, or he was deterred by the belief that the prosecutor would be unreceptive. In this case it was forcefully brought to its attention that the prosecutor was not unreceptive. What then?

It should require but little sophistication for a jury to realize that any defendant would seek to plead to whatever he considered the minimum possible verdict—there could be nothing to lose by not doing so. In the ordinary case, however, the jury has the full spectrum. Perhaps the defendant's hoped-for minimum is an acquittal. In this event he would not seek to plead. Maybe he is convinced that his best hope is for some intermediate verdict, in which case he would seek to plead to that, but the prosecutor has refused. The jury ordinarily does not know which, but the prosecutor knows, and the jury knows

that he knows. Possibly his appraisal of petitioner's hopes could have been regarded as mere (and fair) speculation if offered by someone who was ignorant of the true situation, but the prosecutor was a known insider. Viewed in the abstract, we might have been tempted to make the same observation. In the words of the French playwright, Moliere, "What the devil was he doing in that galley?" (Bartlett, Familiar Quotations (14th ed. 1968) p. 361). The prosecutor, however, was not speaking in the abstract. The question must be, would a jury, wondering whether petitioner was an active participant, or such small fry that the others were indifferent to his presence, be affected by a "frank" remark by one in a position to know what hopes petitioner had revealed to him? We think the answer is yes.

If there can be any doubt about that, (and there were twelve jurors to ponder, and to point out the significance) this is a first degree murder case, the situation was created by a deliberate, and as we shall see, doubly unwarranted, act of the prosecutor, and we believe that fundamental fairness requires that the doubt be resolved in favor of petitioner.

In discussing, and adopting, this likelihood of the jury's inferring, from the prosecutor's statement, that petitioner had offered to plead, the Massachusetts dissenters stated that there was "nothing to suggest that the defendant or his attorney had at any time negotiated for a guilty plea or conceded the defendant's guilt." 1971 Mass.A.S. at 1720–1721, 277 N.E.2d at 110. It is our duty, on habeas corpus, not to leave important factual questions unresolved. 28 U.S.C. § 2254; Fisher v. Scafati, 1 Cir., 1971, 439 F.2d 307, 309. While on the record it seemed to us almost inescapable that petitioner could not have offered to plead, and yet unfair to draw that inference where there had been no finding, we proposed to counsel that they either stipulate to such fact, if there was no disagreement, or return, by order of court, to the district court for

further findings.[5] As a result they stipulated as follows,

"[A]t no time did defendant seek to plead guilty to any offense; at no time did the Commonwealth seek to solicit or offer to accept a plea; and at all times defendant insisted upon a trial."

Accordingly, we have before us a case where the prosecutor, despite the fact that it was totally untrue, strongly indicated to the jury that the defendant had offered to plead, something which, by the great weight of authority, the jury should not be told even when true.[6]

For a prosecutor to convey, or even to permit, a false impression, invades the area of due process. Miller v. Pate, 1967, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690; Hamric v. Bailey, 4 Cir., 1967, 386 F.2d 390. It has been said that the more deliberate the intent, the greater the invasion. *See* United States v. Mayersohn, 2 Cir., 1971, 452 F.2d 521, 526; United States v. Keogh, 2 Cir., 1968, 391 F.2d 138, 146–147. We may now ask how a prosecutor who had given contemplative thought to the matter could honestly believe that a defendant who had seen his co-defendant who had fired the shots allowed to plead to second degree, but made no attempt to plead himself, was risking first degree simply in the hope of getting "something a little less." Whether wisely or not, petitioner must have been hoping for something a lot less. Even if the prosecutor's statement here were to be charged, charitably, to thoughtlessness, in a first degree murder case there must be some duty on a prosecutor to be thoughtful. Moreover, good faith is not determinative. As the Court pointed out in Brady v. Maryland, 1963, 373 U.S. 83, at 87, 83 S.Ct. 1194 at 1196, 10 L. Ed.2d 215, (a suppression of favorable evidence case, which the Court construes pari passu with affirmative falsity),

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either

5. In so doing we are not bypassing the important requirement of exhaustion of state remedies. We read the opinion of the Massachusetts court as, inferentially, declining to pursue this subject.

6. The federal rule forbids the introduction of a withdrawn plea of guilty, Kercheval v. United States, 1927, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009, and so do most states. *E. g.*, Ely v. Haugh, Iowa, 1969, 172 N.W.2d 144; State v. Joyner, 1955, 228 La. 927, 84 So.2d 462; People v. Street, 1939, 288 Mich. 406, 284 N.W. 926; State v. Reardon, 1955, 245 Minn. 509, 73 N.W.2d 192; People v. Spitaleri, 1961, 9 N.Y.2d 168, 212 N.Y.S.2d 53, 173 N.E.2d 35. *Contra:* State v. Carta, 1916, 90 Conn. 79, 96 A. 411; State v. Nichols, 1949, 167 Kan. 565, 207 P.2d 469 (dictum); State v. Weekly, Wash., 1952, 41 Wash.2d 727, 252 P.2d 246. The Massachusetts cases, *e. g.*, Commonwealth v. Devlin, 1957, 335 Mass. 555, 573, 141 N.E.2d 269, deal with pleas to the maximum offense, and so do not reach the question of compromise. Whether the admission would violate constitutional standards is an open question. *See* Hamilton v. California, 1967, 389 U.S. 921, 88 S.Ct. 243, 19 L.Ed.2d 271. It was so held in United States ex rel. Spears v. Rundle, E.D.Pa., 1967, 268 F.Supp. 691. The weight of state authority similarly rejects evidence of unaccepted offers to plead. *See, e. g.*, State v. McGunn, 1940, 208 Minn. 349, 294 N.W. 208; Bennett v. Commonwealth, 1930, 234 Ky. 333, 28 S.W.2d 24. *Contra:* State v. Christian, Mo., 1952, 245 S.W.2d 895. Singularly, in this area some federal cases favor admissibility. We find them unpersuasive. Thus in Moreland v. United States, 10 Cir., 1959, 270 F.2d 887, the court simply stated that while a civil offer of compromise was not an admission of liability, a compromise plea was. In Christian v. United States, 5 Cir., 1925, 8 F.2d 732, the court found a reason: an offer to compromise a crime was against public policy. The court, of course, lacked the instruction of North Carolina v. Alford, 1970, 400 U.S. 25, 37–38, 91 S.Ct. 160, 27 L.Ed.2d 162 (plea may be accepted even though defendant denies guilt). We think the better rule is expressed in Ecklund v. United States, 6 Cir., 1947, 159 F. 2d 81, 84–85. See, also, Amer. Bar Ass'n Standards, Pleas of Guilty § 2.2 and § 3.4; Advisory Committee's Note to Rule 410, Proposed Rules of Evidence for the United States Courts.

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

"The principle of Mooney v. Holohan [294 U.S. 103, 55 S.Ct. 340, 79 L. Ed. 791] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused."

*See also* United States v. Giglio, 1972, 405 U.S. 150, 153–154, 92 S.Ct. 763, 31 L.Ed.2d 104. When the prosecutor added his "frank" statement of petitioner's own position, his personal endorsement of petitioner's guilt acquired a substantial plus. While we regret to add to the Superior Court's docket, we cannot think that a defendant who never sought to plead and has had the prosecutor, in effect, testify in this manner has had a fair trial, or that the length of his argument, as suggested by Judge CAMPBELL, made the error harmless.

Reversed and remanded for further proceedings consistent herewith.

LEVIN H. CAMPBELL, Circuit Judge (dissenting).

While the remarks made were improper and might warrant reversal in the exercise of our supervisory powers were this case to be before us upon appeal from a federal district court, I am unable to agree, especially when read in the context of the prosecutor's extended argument, that they were either so meaningful or prejudicial as to amount to error of constitutional proportions. Admittedly the line between fundamental unfairness, in the due process sense, and a more tolerable species of unfairness, is a hard one to draw, and I can understand the majority's view that, in a capital trial, there is good reason to resolve doubts for the defendant. Nonetheless, I think the inference to be drawn from the prosecutor's remarks is far less obvious than does the majority. As I am persuaded that the petitioner had a substantially fair, if less than perfect, trial, I would deny his petition.