791 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DAVID FIELDS, Petitioner-Appellant,
v.
RONALD C. MARSHALL, Respondent-Appellee.
 85-3614
 United States Court of Appeals, Sixth Circuit.
 4/7/86
 
 AFFIRMED
 N.D.Ohio, 621 F.Supp. 77
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: ENGEL, CONTIE and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner David Fields appeals from the judgment of the district court denying his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. For the reasons that follow, we affirm.
 
 I.
 
 2
 Petitioner was indicted on January 19, 1981, by an Ohio grand jury on one count of aggravated murder in violation of Ohio Revised Code Sec. 2903.01. Petitioner was subsequently found guilty by a jury and sentenced by the trial court to a term of life imprisonment. Petitioner's conviction was affirmed by the Ohio Court of Appeals. The Ohio Supreme Court denied petitioner's motion for leave to appeal. Thereafter, petitioner filed a petition for post-conviction relief in the state trial court. The denial of that motion was affirmed on appeal, thus exhausting petitioner's state remedies.
 
 
 3
 On June 8, 1984, petitioner filed the present petition alleging, among other things, ineffective assistance of counsel, prosecutorial misconduct, and insufficiency of the evidence. On March 1, 1985, the magistrate, without having held a hearing, filed a Report and Recommendation in which he denied the petition. On July 3, 1985, the district court overruled petitioner's objections to the magistrate's Report and Recommendation, denied petitioner's request for an evidentiary hearing, and issued an order adopting the magistrate's decision.
 
 
 4
 The facts underlying petitioner's conviction, as set forth by the Ohio Court of Appeals, are as follows:
 
 
 5
 On the night of August 28, 1980, Lawrence Bates, Sr. was shot and killed in the bedroom of his home. . . . He died as a result of multiple gunshot wounds to the chest.
 
 
 6
 Lawrence Bates, Jr. was in his bedroom when the shooting occurred. He testified he heard one shot, a pause, then three shots in rapid succession. He came downstairs and saw a man dressed in dark clothing hopping over a banister on the porch. He testified he had locked the front door after he came home.
 
 
 7
 Harold Britten, who had known [petitioner] for 13 years, testified that during the afternoon of August 28th, [petitioner] told him that a lady had just tried to hire him to kill her husband. Later that night, [petitioner] went to Britten's house and told him that he [petitioner] had just killed this lady's husband. After Britten expressed disbelief, he and [petitioner] drove past the Bates residence where they saw an ambulance parked in front. Shortly thereafter, they retrieved the pistol [petitioner] had hid in some bushes near a church. The gun was sold later that night for drugs. Britten testified that [petitioner] told him the following details about the murder: The door of the Bates home was left open for him, [petitioner] shot the victim once, bent over him and then shot him again because he was trying to play dead. Britten's statement to the police, made on February 14, 1981 and read into the record by Detective Koelliker, corroborated his testimony. Britten identified the murder weapon that was later confiscated by the police.
 
 
 8
 Kimberly Reynolds testified that on August 28th, she, [petitioner], and Dorothy Bates, one of the victim's daughters, were talking in front of the Bates residence when Dorothy asked [petitioner] if he knew anyone 'to bump off people.' Reynolds stated [petitioner] responded, 'It all depends on who they are.' Reynolds then went in the house and asked Mrs. Bates if she wanted her husband killed, which she replied that she did. Reynolds stated it was [petitioner's] plan that the door be left unlocked for him.
 
 
 9
 [Petitioner] was arrested at his home on February 15, 1981. He was taken to the Justice Center, where he was advised of his rights. Shortly thereafter, [petitioner] gave a detailed statement to the police, in which he confessed to the murder of Lawrence Bates, Sr. [Petitioner] was to be paid $500 by Mrs. Bates for the killing of her husband. This statement was substantially similar to the testimony of Britten and Reynolds. On the night of his arrest, [petitioner] made several telephone calls from the police station to Mrs. Bates, asking her to pay him for the killing.
 
 
 10
 Patrick Reynolds, a police officer for the City of Cleveland, testified to his confiscation of the murder weapon from a dope house on February 15, 1981. Reynolds stated that he conducted a ballistics test of the gun and found that the bullets removed from the victim bore the same class characteristics as the test shots.
 
 
 11
 Maxine Lynch, a reporter for the Cleveland Plain Dealer, interviewed [petitioner] several days after his arrest. [Petitioner] requested the interview to tell his side of the story. Ms. Lynch's article, which appeared in the Plain Dealer on February 21, 1981, was read into the record. In the article, [petitioner] again confessed to killing Bates. [Petitioner] said he killed Bates because he was pressed for money and felt sorry for one of the daughters who was allegedly beaten by Bates.
 
 
 12
 [Petitioner] presented to witnesses in his behalf. . . .
 
 
 13
 App. at 35-37.
 
 II.
 
 14
 On appeal petitioner argues the district court erred in failing to hold an evidentiary hearing concerning his ineffective assistance of counsel and prosecutorial misconduct claims. Petitioner also argues that, in any event, a determination that he was denied the effective assistance of counsel can be gleaned from a review of the trial record. Petitioner's final argument is that he was denied due process of law because he was convicted on insufficient evidence to satisfy the requirements of the Fourteenth Amendment. We will first address petitioner's claims that habeas relief is required for reasons discernible from the record before discussing petitioner's assertion that a federal evidentiary hearing is required.
 
 
 15
 A. Sufficiency of the Evidence.
 
 
 16
 Petitioner's claim that insufficient evidence was produced to support a constitutionally valid conviction may be disposed of summarily. The test is whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Petitioner's claim that his uncorroborated confessions cannot meet this standard is without merit because the testimony of Harold Britten and Kimberly Reynolds did, in fact, corroborate petitioner's confessions. The evidence set forth supra is more than adequate to meet the Jackson v. Virginia standard.
 
 
 17
 B. Ineffective Assistance of Counsel.
 
 
 18
 Petitioner's ineffective assistance of counsel claims are more difficult. Under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), petitioner must demonstrate that his counsel's performance was deficient, i.e., 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' Id. at 687, 104 S. Ct. at 2064. In addition, petitioner must also show that the deficient performance was prejudicial, i.e., that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' Id. at 694, 104 S. Ct. at 2068. 'In making this determination, a court . . . must consider the totality of the evidence before the judge or jury.' Id. at 695, 104 S. Ct. at 2069.
 
 
 19
 The analysis that follows will concentrate on the second prong. That is, we assume without deciding that the complained of acts and omissions by petitioner's trial counsel could constitute deficient performance and inquire only as to whether petitioner has shown he was thereby prejudiced.
 
 
 20
 Petitioner's first two claims involve the admission into evidence of his confessions to the police and to the reporter for the Cleveland Plain Dealer and his counsel's failure to either file a motion to suppress or object to the testimony. However, assuming arguendo such motions and objections would have been successful, petitioner has failed to show that the jury would have had a reasonable doubt respecting guilt. Britten's testimony, which was corroborated through Reynolds' testimony and the testimony regarding the recovery and identification of the murder weapon, forecloses the possibility the jury would have had a reasonable doubt respecting petitioner's guilt. Moreover, there also remains the telephone calls from the police station during which petitioner requested payment from the victim's wife.
 
 
 21
 Petitioner's third claim of ineffective assistance of counsel is that his counsel failed to call witnesses, including petitioner. The district court stated:
 
 
 22
 [Petitioner] has not set forth an affidavit of any alleged witness to establish that a witness should have been called. As to the alleged failure to put petitioner on the stand, he has not set forth any version of what he would testify to inconsistent with his confessions to the police, newspaper reporter, or friend.
 
 
 23
 App. at 179 (Magistrate's Report and Recommendation).
 
 
 24
 Petitioner's only response to this finding is a vague assertion that one Michael Adams had knowledge of petitioner's whereabouts on the night in question. However, petitioner has never revealed the substance of Adams' purported knowledge nor how his testimony would have aided petitioner's case. Moreover, petitioner has not otherwise shown the district court's statement to be in error. Accordingly, petitioner has shown no prejudice as to this allegation of ineffective assistance of counsel.
 
 
 25
 Petitioner's fourth claim is that his trial counsel failed to object to or assign as error on direct review instances of alleged prosecutorial misconduct. Under Ohio law, prosecutorial misconduct of a sufficiently prejudicial level requires the grant of a new trial. State v. Maurer, 15 Ohio St. 3d 239, 266, 473 N.E.2d 768, 793 (Ohio 1984), cert. denied, 105 S. Ct. 2714 (1985). '[T]he conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial.' Id. Improper remarks may be excused, but only if it is 'clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty.' Id. at 267, 473 N.E.2d at 794 (quoting State v. Smith, 14 Ohio St. 3d 13, 15, 470 N.E.2d 883, 886 (1984)).
 
 
 26
 We have carefully considered the alleged instances of prosecutorial misconduct revealed on the record, which concern allegedly inflammatory remarks and statements not supported by the evidence made during closing argument. In our view, beyond a reasonable doubt, petitioner would have been found guilty even absent the complained of remarks. Proof of guilt was overwhelming, and the remarks were isolated. Accordingly, defense counsel's failure to object on this ground or to argue this issue on appeal did not prejudice petitioner.
 
 
 27
 Petitioner's fifth claim of ineffective assistance of counsel concerns his counsel's failure to object to the omission of a jury instruction on the lesser included offenses of murder and manslaughter. Under Ohio law, '[i]f under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given.' State v. Wilkins, 64 Ohio St. 2d 382, 388, 415 N.E.2d 303, 308 (Ohio 1980).
 
 
 28
 In the statement to the police, petitioner related that upon entering the bedroom, Bates 'jumped out of bed and said who is it and then he went toward the dresser drawer and then I shot him . . ..' App. at 227. Voluntary manslaughter requires that the defendant have acted under the influence of a sudden passion or in a sudden fit of rage brought on by serious provocation occasioned by the victim. Ohio Rev. Code Ann. Sec. 2903.03. The evidence relied on by petitioner could not support such a finding. The difference between aggravated murder and murder is that the former requires proof the defendant acted with prior calculation and design. Compare Ohio Rev. Code Ann. Sec. 2903.01 with Sec. 2903.02. In our view, the evidence cited by petitioner could in no way detract from the overwhelming evidence that petitioner acted with prior calculation and design. Under a 'reasonable view' of the evidence relied on by petitioner, it was not 'possible for the trier of fact to find [petitioner] not guilty' of aggravated murder. Accordingly, petitioner was not prejudiced by his counsel's failure to object to the court's not giving an instruction on a lesser included offense.
 
 
 29
 Petitioner's final claim of ineffective assistance of counsel concerns the failure of his counsel to present an opening statement. Petitioner has asserted no credible argument that had counsel presented an opening statement, the result of the trial would have been different. Accordingly, this claim must also be rejected.
 
 
 30
 C. Evidentiary Hearing.
 
 
 31
 Having determined that, on the record, petitioner's claims are without merit, we must next consider petitioner's assertion that the district court erred in declining to conduct an evidentiary hearing regarding petitioner's ineffective assistance of counsel and prosecutorial misconduct claims. In Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745 (1963), the Supreme Court set forth the following standard to govern this inquiry:
 
 
 32
 Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding.
 
 
 33
 Id. at 312, 82 S. Ct. at 757 (Emphasis supplied).
 
 
 34
 No state evidentiary hearing was held on either petitioner's claim of ineffective assistance of counsel or his claim of prosecutorial misconduct. Accordingly, at first blush, it would appear a hearing in federal court is mandated. However, as the emphasized portion of the above quotation from Townsend makes clear, a hearing is not required in the absence of a showing that the record reveals a genuine factual dispute. See Rogers v. Maggio, 714 F.2d 35, 37 (5th Cir. 1983).
 
 
 35
 For this reason, petitioner is not entitled to a federal evidentiary hearing regarding his claims of ineffective assistance of counsel. For example, petitioner alleges his trial counsel was ineffective in failing to move for suppression of his confession to the police on the grounds that he was under medication at that time. In support, petitioner filed certain medical reports establishing that he was hospitalized from December 27, 1980, to January 18, 1981, and from January 25 to February 13, 1981, for treatment of multiple gunshot wounds. However, petitioner was arrested and made his statements on February 15, 1981. The district court considered this evidence but concluded that petitioner had nonetheless failed to show his trial counsel was ineffective:
 
 
 36
 When asked by the police prior to making his statements, he said he had not taken any medication. Prior to making a statement his Miranda rights were given to him in writing and he waived same. Petitioner has not submitted any evidence, by affidavit or otherwise, that on the date of his arrest he was on medication or that, if on medication, it rendered him drowsy or otherwise unable to comprehend or understand the proceedings. The fact he had some health problems does not, standing alone, establish, or even suggest, they were of such magnitude to render his statements involuntary.
 
 
 37
 App. at 178 (Magistrate's Report and Recommendation) (Emphasis supplied).
 
 
 38
 On appeal petitioner has similarly failed to assert what witnesses he would call in an evidentiary hearing which would create a factual dispute as to this issue. This observation holds true for petitioner's other claims of ineffective assistance of counsel as well. In our view, petitioner's claim to the right to an evidentiary hearing regarding his ineffective assistance of counsel claims falls squarely within the following language:
 
 
 39
 [B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing. Thus, a district court does not commit error when it disposes of a habeas petitioner's claims without holding a full-fledged evidentiary hearing when those claims are unmeritorious, conclusory, and wholly unsupported by the record.
 
 
 40
 Ross v. Estelle, 694 F.2d 1008, 1011 n.2 (5th Cir. 1983).
 
 
 41
 Finally, petitioner argues the district court erred in failing to conduct an evidentiary hearing regarding his claim that he was denied due process of law under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), by reason of the failure of the State to reveal any agreement with its main witness, Harold Britten. During trial, an issue arose as to whether the State offered Britten any leniency regarding pending charges of grand theft in return for his testimony against petitioner. Britten testified that no such offer had been made. During closing argument, the prosecutor also represented that no deal had been made with Britten. He asserted that Britten's motivation was that at sentencing, Britten's attorney would assert his cooperation in petitioner's trial as a mitigating circumstance. However, this scenario never came to pass as the State dismissed the charges against Britten within several days after petitioner was convicted.
 
 
 42
 As previously noted, the state courts have never held an evidentiary hearing regarding this claim. However, the district court committed no reversible error in this regard. First, as is the case with petitioner's claim to the right to an evidentiary hearing in connection with his ineffective assistance of counsel claims, petitioner has not shown that the record reveals a genuine factual dispute. The fact that charges were dismissed against Britten, standing alone, does not raise a factual dispute as to whether the dismissal was pursuant to an agreement, entered into prior to trial.
 
 
 43
 Second, and more importantly, even if such a deal existed, the writ could not be granted on this basis. Therefore, any error by the district court in not holding an evidentiary hearing is harmless. Under Brady, due process is violated, and a new trial is required, only if the nondisclosed evidence is 'material.' 373 U.S. at 87, 83 S. Ct. at 1196-97. See also Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972). The Supreme Court has recently made clear that 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' United States v. Bagley, 105 S. Ct. 3375, 3384 (1985).
 
 
 44
 Britten's testimony, although helpful, was by no means critical to the State's case. The prosecution presented at least three other confessions by petitioner; viz., his statement to the police, his statement published in the Cleveland Plain Dealer, and his telephone calls to the victim's wife demanding payment for the murder. Moreover, Reynolds' testimony was strongly probative of petitioner's guilt as was the retrieval of the murder weapon. Under these circumstances, even if defense counsel had been able to discredit completely Britten's testimony through impeachment, there is no reasonable probability the result would have been different.
 
 
 45
 For similar reasons, the writ could not be granted on the basis of prosecutorial misconduct even if petitioner were able to prove the prosecutor knowingly misrepresented to the jury that no deal was made for Britten's testimony. In the context of a habeas petition, the review of charges of prosecutorial misconduct is 'the narrow one of due process, and not the broad exercise of supervisory power.' Donnelly v. DeChristoforo, 416 U.S. 637, 642, 94 S. Ct. 1868, 1871 (1974) (quoting the Court of Appeals, 473 F.2d 1236, 1238 (1st Cir. 1973)). See also Cook v. Bordenkircher, 602 F.2d 117, 119-20 (6th Cir.), cert. denied, 444 U.S. 936 (1979). One of the factors the court must consider is 'the strength of the competent proofs introduced to establish the guilt of the accused.' United States v. Leon, 534 F.2d 667, 679 (6th Cir. 1976). See also Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982) (en banc). As set forth above, the proof of petitioner's guilt is overwhelming. Indeed, there is no evidence in the record which would cast any serious doubt on the correctness of the jury's verdict. Under such circumstances, even if the district court granted petitioner a hearing and thereafter found the state prosecutor to have engaged in prosecutorial misconduct, the writ nonetheless would have to be denied. Accordingly, any error by the court in not conducting the hearing must be considered harmless beyond a reasonable doubt.
 
 III.
 
 46
 The judgment of the district court is therefore AFFIRMED in all respects.