The PRUDENTIAL INSURANCE COMPANY OF AMERICA

v.

Lillian TULL, et al.

Civ. A. No. 80–0683–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 31, 1981.

---

Lewis T. Booker, Roger L. Gregory, Richmond, Va., for plaintiff.

William W. Davenport, Evelyn G. Tucker, Richmond, Va., for defendant.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

This is an interpleader action filed by Prudential Life Insurance Company of America, which holds the proceeds of an insurance policy issued to Reuben Varn Tull. By the terms of the policy, Prudential promised to pay to the insured's "heirs at law" the sum of $20,000 upon the death of the insured. Reuben Varn Tull died, apparently intestate, on 17 June 1979, and Prudential acknowledges that the policy was in full force and effect at that time. In its Amended Complaint and Bill of Interplead-

er filed 8 June 1981, Prudential alleges that it is in doubt as to the proper beneficiaries under the policy.

Before the Court proceeds to the legal issues in the case, it must set the stage and identify the cast of characters. Lillian Satchell Tull claims that as an heir at law, being the surviving spouse, she is entitled to at least a portion of the insurance proceeds. Reuben Varn Tull and Lillian Stachell Tull were married on 16 June 1979. However, seven children of a previous marriage of Reuben Varn Tull claim that they are entitled to the entire proceeds. Under Va.Code § 64.1–1 First, a surviving spouse is entitled to a dower interest under § 64.1–19 in any real estate as to which a decedent died intestate.[1] Surviving children or their descendants are entitled to the whole less the surviving spouse's dower interest. Ordinarily, therefore, Lillian Tull and the surviving children of Reuben Varn Tull would all be entitled to share in the insurance proceeds. This action, though, is anything but the ordinary case.

For two reasons, it is claimed that Lillian Satchell Tull is barred by law from taking any portion of the insurance proceeds. Prudential's stated reason for proceeding under interpleader was that it could not determine whether Lillian Tull would properly be considered a "surviving spouse" because it appeared to Prudential that Lillian Tull's marriage to Reuben Varn Tull was bigamous. Prudential sets forth in its Amended Complaint filed 8 June 1981 the fact that Lillian Tull and Reuben Varn Tull were married on 16 June 1979. Prudential further contends that Lillian Tull's previous marriage to one Lewis T. Grimes did not terminate until 6 September 1979.

The issue of the alleged bigamous marriage was, or ought to have been, settled by the Court's order dated 24 March 1981. In that order, the Court denied a Motion for

---

1. The Complaint in interpleader filed on behalf of Prudential alleged that the insurance proceeds were payable to decedent's "heirs at law." Amended Complaint ¶ 12. On the strength of this allegation, to which no party takes issue, the Court assumes that the insur-

ance proceeds should be distributed as real estate. Even if it be considered personal property payable to decedent's next of kin, Lillian Tull would nevertheless have an interest, but under Va.Code § 64.1–11.

Summary Judgment predicated upon the alleged bigamous marriage. It denied the Motion for the reason that the records of the Circuit Court of the City of Richmond, Division I, submitted by Lillian Tull on 6 March 1981 conclusively establish that Lillian Tull's previous marriage to Lewis William Grimes, Jr., was annulled on 6 September 1979 on the ground that Lewis Grimes, Jr., had entered into the marriage prior to the dissolution of *his* earlier marriage. Bigamous marriages are void *ab initio* under Section 20–43 of the Virginia Code. Thus, Lillian Tull's putative marriage to Lewis William Grimes, Jr. could not be a bar to her subsequent marriage to Reuben Varn Tull. If there were no other matters in dispute in this action, Lillian Tull would be entitled to her dower interest or her one-third share of the surplus, as the case may be.

The seven children of Reuben Varn Tull's prior marriage raise a second factor, however, which they contend should disable Lillian Tull from sharing in the insurance proceeds. Lillian Tull and Reuben Varn Tull were married on 16 June 1979. On his wedding night Reuben Varn Tull was murdered. Upon trial in the Circuit Court of Nottoway County on 18 December 1980, a jury returned a guilty verdict for his murder against Lillian Tull. Lillian Tull has subsequently filed a Petition for Writ of Error in the Supreme Court of Virginia. There has not as yet been a ruling on her petition.

The Tull children argue that Lillian Tull is barred from sharing in the benefits of the insurance policy by Section 64.1–18 of the Virginia Code. That section provided in pertinent part:

> No person shall acquire by descent or distribution or by will any interest in the estate of another, nor receive any payment under any policy of life insurance upon the life of another for whose death such person has been convicted of murder.

During the pendency of this action, Section 64.1–18 has been repealed and has been replaced by Chapter 21 of Title 55. Chapter 21 consists of 15 separate provisions which explain in great detail the extent to which property rights are lost by persons convicted of the murder of a person from whom the murderer would ordinarily acquire property rights. Section 55–411(A) is the specific provision relevant to this case, and it provides as follows:

> Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance or bond or other contractual agreement on the life of the decedent, or as the survivor of a joint life policy shall be paid to the estate of the descedent, unless the policy or certificate designates some person not claiming through the slayer as alternative beneficiary to him.

"Slayer" is defined in § 55–401(1) as "any person who is convicted of the murder of the decedent." Under both the old and the new law, then, one "convicted" of murder is barred from sharing in the insurance proceeds payable on the death of the victim. The analysis is the same under either statute so it is not necessary to determine which is applicable.

The issue thus before the Court is whether Lillian Tull has the status of "one convicted of murder" or the status of "slayer." It is undisputed that she has been found guilty of murder by a jury in the Circuit Court of Nottoway County. However, her Petition for Writ of Error remains pending, and the committee for Lillian Tull argues that a finding of guilt at the trial court level is not a "final conviction" until it is affirmed on appeal to the Virginia Supreme Court. On this ground, the committee argues that the Court should stay decision until final disposition of the Petition for Writ of Error. The Tull children, by counsel, argue on the other hand that upon a finding of guilt by a jury, Lillian Tull stands "convicted" for the purposes of the former Section 64.1–18 and its successor provisions. The Tull children therefore seek immediate distribution of the insurance proceeds.

While it remained in effect, Section 64.1–18 was interpreted on several occasions,

most recently in *Sundin v. Klein*, 221 Va. 232, 269 S.E.2d 787 (1980). See also, *Life Ins. Co. v. Cashatt*, 206 F.Supp. 410 (E.D. Va.1962); *Blanks v. Jiggetts*, 192 Va. 337, 64 S.E.2d 809 (1951). However, no Virginia case answers the question whether a person who has been found guilty in the trial court but has an appeal pending is "convicted" for the purposes of the statutory provisions barring convicted murderers from sharing in the insurance proceeds of their victims.

This is a question which properly should have been answered by the Virginia legislature when it drafted the statutory provisions in question. The legislature's failure to define the status of "one convicted of murder" has already cost the parties to this action a considerable amount of time and money in their effort to resolve the ambiguity in the statutes. The latest revision does not rectify the dereliction. Since plaintiff chose a federal court for its bill in interpleader neither this Court's opinion nor an appeal therefrom will be definitive of Virginia law.

The Court concludes that under either Virginia statute a criminal defendant is entitled to pursue his or her appellate rights before any extraordinary forfeiture, such as a bar to receipt of insurance proceeds.

In reaching this conclusion, the Court is instructed by the experience of the Virginia legislature with regard to Section 24.1–79.3 of the Virginia Code which requires forfeiture of public office by a person convicted of the commission of a felony. Prior to the decision in *Smith v. Commonwealth*, 134 Va. 589, 113 S.E. 707 (1922), the public office forfeiture provision was worded as follows:

> The circuit courts of counties ... shall have power to remove from office all state, county ... officers elected or appointed ... who shall have been convicted ... of any act constituting a violation of any penal statute involving moral turpitude.

The issue arose in *Smith v. Commonwealth* whether, under that provision, a finding of guilt by a jury was sufficient or whether the word "convicted" in the statute required a judgment of conviction entered by the trial court. The Virginia Supreme Court held in *Smith v. Commonwealth*, that a finding of guilt by the jury did not of itself constitute a "conviction" sufficient to disqualify the defendant from service in public office. 113 S.E. 708–710.

Following the decision in *Smith v. Commonwealth*, the Virginia legislature undertook to clarify its intent with respect to the public office forfeiture provision. As presently drafted, the provision provides as follows:

> Any person holding any public office of honor, profit or trust in this State who may be convicted for commission of a felony by the courts of this State *and all rights of appeal have terminated, shall by such final conviction* forfeit his office or post. ... [Emphasis added].

Thus, when the issue was called squarely to the attention of the legislature, it determined that a criminal defendant should be extended all rights of appeal before the particular forfeiture in question would be imposed.

The Tull children might fairly argue that, by its action regarding Section 24.1–79.3, the Virginia legislature has demonstrated that where it intends the word "conviction" to mean conviction after appellate review, the legislature will state that explicitly, and where the legislature does not do so, it can be assumed that the legislature intended that a forfeiture could be imposed without regard to appellate rights. Such an argument is based on reasonable statutory construction. And yet in this case the public forfeiture statute and the insurance proceeds statute were not simultaneously enacted nor were they even close in time. Further, the problem in defining "conviction" for the insurance proceeds statute has not apparently been brought to the attention of the Virginia legislature, while the ambiguity of the term "conviction" in the public office forfeiture provision was clearly evident from the decision in *Smith v. Commonwealth*. The Court therefore rejects the argument that since Section 24.1–

79.3 mentions appellate rights and former Section 64.1–18 and its successor provisions do not mention appellate rights, then the right to share in insurance proceeds is forfeited without regard to the pendency of an appeal.

In *Smith v. Commonwealth*, the Virginia Supreme Court surveyed a variety of forfeitures which could be imposed upon conviction for an offense, and it determined, based on extensive citation of authority, that where forfeitures of rights outside the criminal process are at issue, a distinction must be made between "conviction" by a jury and a "final conviction." As the Virginia Supreme Court explained:

> Where the context in which the word ["conviction"] is found concerns, not merely the particular case, but the effect of the conviction of the accused in one case, when pleaded or given in evidence in another, the word "conviction" or "convicted" is more comprehensive, and includes the judgment of the court upon the verdict or confession of guilt. 113 S.E. at 709.

The matter of appellate rights was not at issue in *Smith v. Commonwealth*, but it was at issue in a case relied upon by the *Smith* court: *White's Case*, 79 Va. 611 (1884).

In *White's Case*, the Virginia Supreme Court considered the meaning of the words "former conviction" in the context of a statute providing enhanced punishment for conviction of a second offense. The defendant in *White's Case* was first convicted of operating as a merchant without a license. During the pendency of the appeal from his first conviction, the defendant was charged and tried for a second offense for operating without a license. At trial, the defendant moved to continue the trial on the second offense until disposition of his appeal from the first conviction. He argued that his first conviction was not a "final conviction" which could bring to bear the enhanced punishment until the conviction had been affirmed on appeal.

The Virginia Supreme Court in *White's Case* ruled that a continuance of the second trial should properly have been granted be-cause the first conviction "was wanting in that degree of conclusiveness without which it was impossible to take safely any step either to dismiss or proceed with this prosecution alleging a prior conviction" until disposition of the appeal. Id. at 616. In so holding, the Supreme Court recognized the various usages of the phrase "conviction." On the one hand, as the Supreme Court noted, "conviction" is said to be "finding a person guilty by verdict of a jury." On the other hand, the word "conviction" is "sometimes used to denote *final judgment*." Id. at 615. [Emphasis in the original]. The Court then suggested that:

> Where the statute imposes an increased penalty for each succeeding offense, and when the alleged prior conviction and judgment thereon is held for review on writ of error in the court of last resort, it would be safer and more in consonance with the liberal and just view of the rights of the citizen to hold ... that pending the alleged former conviction in the appellate tribunal there is wanting that final judicial sentence essential to constitute conviction.

Id. at 616. The logic, though not the express holding, of both *White's Case* and *Smith v. Commonwealth* indicate that the proper course of action in the instant case is to stay a ruling on the question of distribution until Lillian Tull's petition for a writ of error is decided by the Virginia Supreme Court.

▮ The Tull children refer to Rule 1:1 of the Rules of the Supreme Court of Virginia and argue therefrom that this Court is bound to treat the murder conviction as final and conclusive. That rule has been interpreted to mean that a judgment or sentence which was validly entered is final and conclusive upon all courts, except the appellate court, from the passage of twenty-one days after the date of entry. See *Smith v. Commonwealth*, 207 Va. 459, 150 S.E.2d 545, 549–550 (1966). From a review of the cases the Court concludes that Rule 1:1 is addressed to the matter of finality only for purposes of defining procedural rights after entry of a judgment. The rule

has no application where the question is the conclusive effect which must be given to a judgment which is pending for review by the Virginia Supreme Court.

■ The Court has reviewed the authority from jurisdictions outside Virginia which the committee for Lillian Tull cites in her brief. The Court finds that the weight of authority both within Virginia and outside the Commonwealth is in accordance with the view expressed by the court in *Sportservice Corp. v. Dept. of Public Safety,* 293 So.2d 530, 534 (La.App.1974):

> When a legal determination of guilt is made the statutory test of the application of some noncriminal penalty, it is necessary to seek an interpretation of the word 'conviction' that will insure that this legal determination has been made with reasonable certainty and finality.

Guided by the decisions in *White's Case* and *Smith v. Commonwealth* discussed above, the Court holds under Virginia law that, for the purposes of the insurance proceeds forfeiture provision, a person does not stand finally "convicted" until the Virginia Supreme Court has reviewed the trial court's finding of guilt and has affirmed the conviction by appropriate action.

Accordingly, the Tull children's Motion seeking immediate distribution of the insurance proceeds is DENIED, and this action is STAYED until the Virginia Supreme Court has ruled upon Lillian Tull's Petition for Writ of Error. The committee for Lillian Tull SHALL advise the Court of any action taken by the Supreme Court upon the petition.

And it is so ORDERED.