The **PRUDENTIAL INSURANCE COMPANY OF AMERICA**

v.

**Lillian TULL, etc., et al.**

**Civ. A. No. 80–0683–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 8, 1981.
On The Merits Feb. 11, 1982.

Lewis T. Booker, Roger L. Gregory, Richmond, Va., for plaintiff.

William W. Davenport, Evelyn G. Tucker, Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

In Paragraph 12 of both the original and the Amended Complaint in this interpleader action, Prudential Insurance Company stated that it promised to pay benefits to the insured's "heirs at law." This allegation was undisputed by the other parties.[1] Prudential did not file with the Complaint a copy of the insurance policy or the beneficiary designation form. In its 31 August Memorandum and Order, which stayed the action pending the ruling of the Virginia Supreme Court on Lillian Tull's Petition for Writ of Error, the Court, in reliance on Paragraph 12, assumed the beneficiaries were the persons who were decedent's heirs at law and applied Virginia law to determine their identity. Under Virginia law, the Court found that Lillian Tull and the surviving children of Reuben Varn Tull, as his heirs at law, would share in the proceeds of the insurance policy.

The Court's assumption was based on the belief that the Complaint was drafted with care by knowledgable lawyers who had used the term "heirs at law" advisedly and in accord with its legal significance. Prudential now indicates that its use of the phrase was possibly inadvertent. It has filed a motion to amend the 31 August order. A copy of the insurance policy and the designation of beneficiary form accompany the motion. The designation provides that the

---

1. It is true that Paragraph 14 of both Complaints mentions the "by law" language but the Court deemed the legal phrase of art to be controlling.

proceeds be distributed "by law." Neither in the policy nor in the designation is there relevant mention of heirs at law. There being no named beneficiary mentioned in the designation, Art. I, § 3 of the policy directs that the proceeds be paid "to the widow...." To the same effect is 38 U.S.C. § 770(a).[2]

Be that as it may, the more serious question now presented is, in light of the Supreme Court's ruling in *Ridgway v. Ridgway*, —— U.S. ——, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981),[3] do the provisions of Section 64.1–18 of the Virginia Code have any application in this case?[4] The parties shall file appropriate briefs on this issue. Petitioner shall file a brief within 10 days of entry of this order. Respondent Committee for Lillian Tull shall file her brief within 10 days of the filing of petitioner's brief. Respondent children shall file briefs within 10 days of the filing of the Committee's brief. Petitioner and respondent Committee shall file rebuttal briefs within 3 days of the filing of respondent children's briefs.

And it is so ORDERED.

## ON THE MERITS

In this interpleader action filed by Prudential Insurance Company, the Court is to determine the beneficiary of a Servicemen's Group Life Insurance Policy on the life of Reuben Varn Tull, deceased.[1] There is no named beneficiary and the designation of beneficiary form provides, in the absence of a named beneficiary, that the proceeds be distributed "by law." Both the policy and 38 U.S.C. § 770(a) direct that in such case the proceeds are distributed according to the order of precedence set forth in the policy and the statute. In the first category is the widow of the insured. In the second are the children and descendants of deceased children of the insured. Reuben Tull is survived by a widow and seven children by a previous marriage all of whom were made parties to this interpleader action.

On 18 December 1980, Lillian Tull, the widow, had been found guilty by a jury in the Circuit Court of Nottoway County, Virginia, of the murder of Reuben Tull. Under § 64.1–18 of the Virginia Code, Lillian Tull upon conviction for the murder of the insured would forfeit any claim to the proceeds of any life insurance policy on the life of her victim.[2] This Court stayed the interpleader action until the Virginia Supreme Court had ruled on Lillian Tull's Petition for Writ of Error. 524 F.Supp. 166, 171 (E.D.Va.1981). During the pendency of the stay, the Supreme Court decided *Ridgway v. Ridgway*, —— U.S. ——, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). Thereupon, the parties to this suit were directed to file briefs on the issue of the effect of Ridgway on the application of § 64.1–18 of the Virginia

**2.** Prudential argues in its Motion to Amend that such disposition is required by the recent United States Supreme Court ruling in *Ridgway v. Ridgway*, —— U.S. ——, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), that federal law controls in a Servicemen's Group Life Insurance Policy. Prudential could have made an equally effective argument as to disposition by simply and unambiguously alleging the plain provisions of the policy.

**3.** *Ridgway* is a case almost as appealing for a variance from the named beneficiary as this one. Yet the Supreme Court quoted with approval the uncompromising language in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 584, 99 S.Ct. 802, 809, 59 L.Ed.2d 1 (1979) with respect to the federal policy that the designation prevail:

> It pre-empts all state law that stands in its way. It protects the benefits from legal proc-

ess '[n]otwithstanding any other law ... of any State' .... It prevents the vagaries of state law from disrupting the national scheme....

**4.** The fact that counsel for Committee, even after having her attention called to *Ridgway*, does not raise the issue herself, suggests the Court misapprehends.

**1.** An earlier reported opinion is published at 524 F.Supp. 166 (E.D.Va.1981).

**2.** Section 64.1–18 has been replaced by §§ 55–401 through –415. However, the substance of the law as applied in this case has not been changed. Under either the old or new statutes, one convicted of murdering the insured receives no proceeds from a life insurance policy. See *The Prudential Ins. Co. of America v. Tull*, 524 F.Supp. 166, 168 (E.D.Va.1981).

Code to a Servicemen's Group Life Insurance Policy. During the briefing period, the Virginia Supreme Court denied Lillian Tull's petition for a writ of error. Lillian Tull now stands finally "convicted" under Virginia law, and the briefing on the effect of *Ridgway* is complete. Thus, the case is now ripe for the Court to determine the disposition of the insurance proceeds.

In *Ridgway*, despite a State court decree that enjoined the insured to maintain a policy for the benefit of the children of his first marriage, the insured designated his second wife as the beneficiary. The insurance contract in question was a Servicemen's Group Life Insurance Policy. Upon the death of the insured, the State court imposed a constructive trust on the insurance proceeds for the benefit of the children of the first marriage. The Supreme Court reversed, holding that such action was in conflict with both the anti-attachment provisions of the statute, 38 U.S.C. § 770(g), and with the provision and regulations granting the insured the right to change the beneficiary of the policy at any time and without the knowledge or consent of the previous beneficiary. 38 U.S.C. § 770(a); 38 CFR § 9.16(e). The Court held that federal law controls in a Servicemen's Group Life Insurance Policy to prevent any State law from disrupting the national scheme. Quoting from 38 U.S.C. § 770(g) exempting the policy proceeds from any "attachment, levy, or seizure by or under any legal or equitable process whatever," the Court noted that this strong language speaks "in the broadest of terms" to give effect to "the unqualified sweep of the federal statute." Id. at ——, 102 S.Ct. at 57. Any "equities" in favor of the insured's children could not override the express intent of Congress to "insulat[e] the proceeds of Servicemen's Group Life Insurance Act insurance from attack or seizure by any claimant other than the beneficiary designated by the insured or the one first in line under the statutory order of precedence." Id. at ——, 102 S.Ct. at 59.

The Supreme Court in *Ridgway* went further and quoted from *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 584, 99 S.Ct. 802, 809, 59 L.Ed.2d 1 (1979), in language so sweeping as to cast doubt on the efficacy of any State effort to affect the payment of any such policy proceeds.

> [The federal statute] pre-empts all state law that stands in its way. It protects the benefits from legal process "[n]otwithstanding any other law . . . of any State." . . . It prevents the vagaries of state law from disrupting the national scheme, and guarantees a national uniformity that enhances the effectiveness of congressional policy. Id. at 584, 99 S.Ct. at 809.

Despite this far-reaching language, the holdings in *Hisquierdo* and *Ridgway* do not control the disposition of the case at bar. In both *Ridgway* and *Hisquierdo*, the State law conflicted with the purpose and the language of the federal law. Such is not the case presented here. The purpose of the Virginia statute is "to effect the policy of this Commonwealth that no person shall be allowed to profit by his own wrong." Va.Code Ann. § 55–414 (1981). This policy is in conflict with no policy or provision, either express or implied, in the federal statute or scheme. The Virginia statute also has as a purpose the preservation of the life of the insured against one who would wish to destroy the life to collect the insurance benefits. This purpose also is not in conflict with the statutory scheme or with the Court's ruling in *Ridgway* or in *Hisquierdo*.[3] Both *Ridgway* and *Hisquierdo* focused on preventing a State from diminishing the rights granted to the person entitled by the federal statute and policy provision to the insurance proceeds. But the Servicemen's Group Life Insurance Act was never intended to protect a beneficiary convicted of murdering an insured who is covered by the statute. Therefore, this Court holds that because the Virginia statute is

---

**3.** The Supreme Court in *Ridgway* expressed no view on the "legal aspects" of a fact situation like the one presented in this case, "where the named beneficiary murders the insured service member." —— U.S. at ——, 102 S.Ct. at 57.

not in conflict with the federal statute and does not frustrate any provision of the federal scheme, the Virginia statute controls to bar Lillian Tull from participating in the proceeds of the insurance policy.

■ An additional issue presented here is whether an independent determination by this Court that Lillian Tull did in fact murder her husband is required. All parties agree that under *Burns v. United States*, 200 F.2d 106 (4th Cir. 1952), such a hearing is required. However, this case is distinguishable from Burns in two respects. First, in *Burns* the Court was determining under a common law standard whether the person did "intentionally and feloniously" kill the insured so as to trigger the equitable principle that no man shall profit from his wrongs. In contrast, the case here deals with the operation of a Virginia statute that a person convicted of murder shall not recover insurance proceeds incident to that death. Lillian Tull stands convicted of murder; there being no dispute on this point the Virginia statute controls and she shall not recover. No hearing is required or would serve any purpose.

Secondly, even if the Virginia statute did not make a hearing unnecessary, *Burns* would not in this situation require a hearing. In *Burns*, the wife had been *acquitted* in State court on the criminal charge of murdering her husband. In the subsequent interpleader action in federal district court, the Court determined independently that, despite the acquittal of the murder charge, the wife did "intentionally and feloniously kill" her husband so as to preclude her recovering the insurance proceeds. It is not necessarily inconsistent that the wife was found not guilty of murdering her husband under a criminal burden of proof but was found to have intentionally and feloniously killed her husband under a civil standard.

In this case the situation is reversed. Lillian Tull has been found guilty in State court of murdering her husband. For this Court to now raise the question that Lillian Tull did not intentionally and feloniously kill her husband would offend the notion of comity and would be an affront to the State court. The parties have cited no case in which a State court found the beneficiary guilty of murder and yet a federal court made an independent determination of an intentional and felonious killing. See *United States v. Kwasniewski*, 91 F.Supp. 847 (D.C.Mich.1950).[4]

This Court therefore holds that the Virginia statute controls and since there is now a conviction, Lillian Tull forfeits any right to the proceeds of the insurance policy. The proceeds are to be distributed *per stirpes* to the children of the decedent. 38 U.S.C. § 770(a). Within 10 days of entry hereof, counsel shall submit a proposed scheme of distribution, with appropriate procedures to safeguard the interest of the minors.

---

4. *Shoemaker v. Shoemaker*, 263 F.2d 931 (6th Cir. 1959), is silent on the State court record.