**CONNECTICUT GENERAL LIFE INSURANCE COMPANY,**
**Plaintiff,**

v.

**Douglas C. RINER, et al., Defendants.**

**No. 1:00CV00065.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Jan. 4, 2005.

Timothy W. McAfee, McAfee Law Firm, P.C., Norton, VA, for Robert R. Varner, III.

Douglas C. Riner, Waverly, Va, Pro Se.

## OPINION

JONES, Chief Judge.

Douglas C. Riner was convicted in state court of murdering his wife and his conviction was affirmed on appeal. Riner is the primary beneficiary of an insurance policy on his wife's life. Prior to his conviction, the insurance company filed this interpleader action in order to resolve the conflicting claims to the proceeds of the policy between Riner and the alternative beneficiary. Riner, proceeding pro se, has asked the court to stay the case pending his further efforts to have his conviction set aside. For the reasons that follow, I will deny the motion for a stay and enter summary judgment for the secondary beneficiary.

I

In January of 2000, Riner was indicted by a state grand jury in Wise County, Virginia, on charges of arson and first degree murder stemming from the death of his wife, Denise Lane Riner.

In May of that same year, the plaintiff Connecticut General Life Insurance Company ("Connecticut General") brought the present interpleader action pursuant to Federal Rule of Civil Procedure 22, seeking a determination of the party to whom payment should be made under a life insurance policy insuring Mrs. Riner's life. That policy, issued as an employee benefit, was in the amount of $50,000, with a double indemnity clause in the case of "accidental death or dismemberment." Riner was named the primary beneficiary and Mrs. Riner's son from a previous relationship, Robert Ray Varner III ("Varner"), was designated the secondary, or alterna-

tive, beneficiary.[1]

Thereafter, Connecticut General paid $100,000 into court and was dismissed as a party to this suit.

Riner sought and was granted a stay of the proceedings in this court pending the outcome of his state criminal trial. On November 3, 2000, he was convicted both of arson and the first degree murder of his wife. On July 30, 2001, Riner was sentenced to thirty-five years in prison. Following his conviction, but prior to his sentencing, Riner's attorney in this case was allowed to withdraw, with Riner's approval. Riner has since been unable to obtain other counsel. At Riner's request, the action was further stayed pending the outcome of his appeal. The Virginia Supreme Court has now recently affirmed Riner's convictions. *Riner v. Commonwealth*, 268 Va. 296, 601 S.E.2d 555 (2004), *reh'g denied*, No. 031299, Nov. 17, 2004.

Varner has moved for summary judgment in his favor. Riner was given a *Rosoboro* notice,[2] has responded, and the motion for summary judgment is now ripe for decision. In his response, Riner also moved that the present action be further stayed "until ... complet[ion] ... of habeas corpus relief, if necessary, in his state criminal conviction." (Mot. Opp'n 23.)

## II

It is first necessary for me to sua sponte determine the basis for jurisdiction in this court. The insurance policy at issue was part of an employee welfare benefit plan covered by Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001–1144 (West 1999 & Supp.2004), and the Complaint asserts federal question jurisdiction based on ERISA.

■■■ ERISA states that, with some exceptions, "the United States District Courts shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a *participant, beneficiary,* [or] *fiduciary.*" 29 U.S.C.A. § 1132(e)(1) (emphasis added). Connecticut General is neither a "participant" nor a "beneficiary" of an ERISA plan. *See* 29 U.S.C.A. § 1002(7)-(8). Even if Connecticut General were a "fiduciary,"[3] it still would have to demonstrate that it filed suit for a statutorily specified purpose in order to establish subject matter jurisdiction under ERISA. A fiduciary is entitled to bring a civil action under ERISA only to: (1) enjoin an act that violates a provision of ERISA or the plan; or (2) obtain "other appropriate equitable relief." 29 U.S.C.A. § 1132(a)(3). It is clear from the face of the Complaint that Connecticut General

---

1. In addition to Riner and Varner, Connecticut General also named Chyrl Ringley, Fredia Helbert, Michelle Hurd, and Becky Moore, all co-administrators of the estate of the decedent, as defendants. Those defendants have not appeared. When the present suit was first filed, Varner was a minor, but he has now obtained the age of majority.

2. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir.1975) (requiring notice to pro se litigant of opportunity to respond to dispositive motion).

3. When the essence of a complaint is the wrongful denial of a life insurance policy ben-

efit and the insurance company exercised at least some discretion in the decision to deny benefits, that company is a "fiduciary" within the meaning of ERISA. *Aetna Life Ins. Co. v. Hager*, 930 F.Supp. 343, 345 (E.D.Wis.1996) (internal citation omitted); *see also Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir.1995) (holding that insurance company was fiduciary when its insured was entitled to benefits "in [the company's] sole discretion"); *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 85 (4th Cir.1993) (recognizing health insurer as fiduciary when it exercised "discretionary authority or discretionary control with respect to the management of the plan").

does not allege any violation of either ERISA or any benefit plan.

Determining whether Connecticut General's claim seeks "other appropriate equitable relief" is more difficult. Some courts have recognized suits in interpleader to determine the proper beneficiaries of a life insurance policy as suits to obtain equitable relief under ERISA.[4] Others view such interpleader suits not as actions in equity, but ones in law, seeking a determination of contract rights.[5] Because the Fourth Circuit has not addressed this question, I will turn to other possible bases for the exercise of federal jurisdiction in this case.

■ Connecticut General asserted this action under "rule interpleader" pursuant to Federal Rule of Civil Procedure 22. Alone, "[r]ule 22 'is merely a procedural device; it confers no jurisdiction on the federal courts.'" *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C.Cir.1993) (quoting *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1382 (9th Cir. 1988)). Rather, the rule allows federal courts to hear interpleader actions when the underlying controversy could have been heard in federal court through diversity or federal question jurisdiction.

■ As already discussed, the Fourth Circuit has not yet established whether cases like this one raise a federal question. However, federal jurisdiction does exist in this case pursuant to diversity jurisdiction. Diversity requires "each stakeholder" to be diverse from "each claimant," an amount in controversy exceeding $75,000,

and a finding that the interests of the parties are genuinely adverse. *Leimbach v. Allen*, 976 F.2d 912, 916 (4th Cir.1992) (internal citation omitted); *see also* 28 U.S.C.A. § 1332(a) (West 1993 & Supp. 2004). There is diversity here between the stakeholder Connecticut General and the defendant claimants. Connecticut General has its principal place of business in Connecticut. Riner is a resident of Virginia, Varner is a resident of Texas, and all co-administrators of Mrs. Riner's estate are residents of Virginia. The amount in controversy is more than $75,000. Although Mrs. Riner's insurance policy was for $50,000, the double indemnity clause provided for an additional $50,000 upon "accidental death or dismemberment," bringing the total amount in controversy to $100,000. (Pl.'s Compl. Interpl. ¶ 6.) Finally, "under the settled law of this circuit, the stakeholder insurer[ ] ... ha[s] interests sufficiently adverse to those of the claimants" when, as in this case, "the otherwise disinterested insurer had a substantial interest in having the complaint for interpleader granted [at the moment of filing], thereby avoiding the expense of further litigation and risk of multiple liability." *Leimbach*, 976 F.2d at 917. Thus, this court has subject matter jurisdiction. *See id.* at 916.

### III

Ordinarily, suits based upon diversity jurisdiction are governed by state law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Griffin v. McCoach*, 313 U.S. 498, 503, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941)

---

**4.** *See Metro. Life Ins. Co. v. N. Trust Co. of Chicago*, No. 94 C 2850, 1996 WL 145974, at *5 (N.D.Ill. March 27, 1996); *Aetna Life Ins. Co. v. Hager*, 930 F.Supp. at 345.

**5.** *See Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1251 (9th Cir.

1987); *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1523 (11th Cir.1987); *KLLM, Inc., Employee Health Prot. Plan v. Ontario Cmty. Hosp.*, 947 F.Supp. 262, 266 (S.D.Miss.1996); *Conn. Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F.Supp. 193, 197 (S.D.N.Y.1993).

(applying rule to cases brought under the federal interpleader statute). However, ERISA contains a general preemption clause providing that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.A. § 1144(a). This clause "has been broadly interpreted by the courts to carry out Congress' intent to displace any state law efforts to regulate ERISA matters," *Tri–State Mach., Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 312 (4th Cir.1994), and to provide "uniform substantive law to safeguard the interests of employees and their beneficiaries." *Mut. Life Ins. Co. of N.Y. v. Yampol*, 840 F.2d 421, 425 (7th Cir.1988).

The state law relevant to the ultimate issue in this case, whether Riner is entitled to the proceeds of the decedent's life insurance policy, is Virginia's "slayer statute." *See* Va.Code Ann. §§ 55–401 to 415 (Michie 2003). It provides that "[i]nsurance proceeds payable to the slayer as the beneficiary ... of any policy ... of insurance ... on the life of the decedent ... shall be paid to the estate of the decedent, unless the policy ... designates some person not claiming through the slayer as alternative beneficiary to him." *Id.* § 55–411(A).

The courts are divided as to whether ERISA preempts a state slayer statute. *See Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 960–63 (9th Cir.1998) (discussing cases), *abrogated on other grounds, Egelhoff v. Egelhoff, ex rel. Breiner*, 532 U.S. 141, 146, 150, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). There is no controlling precedent determining whether ERISA preempts the Virginia slayer statute. *See Addison v. Metro. Life Ins. Co.*, 5 F.Supp.2d 392, 393 (W.D.Va.1998) (stating "it is unclear whether Virginia state law preempts ERISA ... so that the Virginia Slayer's Statute governs"). It is not necessary for me to decide this issue because the outcome of this case is the same whether state or federal law applies—Riner is not entitled to the proceeds of the life insurance policy.

■ Virginia law clearly forfeits any. right a slayer has to the proceeds of an insurance policy issued in the name of the deceased. *See* Va.Code Ann. § 55–411. A slayer is one who "is 'convicted' of the murder of the decedent." *Id.* § 55–401(1). In this case, Riner was found guilty by a jury of murdering the decedent, had final judgment entered against him, and has exhausted his rights of appeal; therefore, he must forfeit his beneficial interest.

■ Alternatively, even if ERISA preempts Virginia's slayer statute, it still would be inappropriate for the court to allow the slayer to benefit from his wrongdoing. None of ERISA's provisions address the distribution of benefits to a beneficiary responsible for killing the plan participant to obtain those benefits. *Emard*, 153 F.3d at 959. Therefore, it would be necessary for the court to look to federal common law for a governing rule. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 318 U.S. 744, 63 S.Ct. 573, 87 L.Ed. 838 (1943). "It has long been a principle of federal common law that ... killers should not be rewarded with insurance benefits for taking a life...." *Admin. Comm. for the H.E.B. Inv. & Ret. Plan v. Harris*, 217 F.Supp.2d 759, 761 (E.D.Tex. 2002) (citing *Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600, 6 S.Ct. 877, 29 L.Ed. 997 (1886)). Congress could not have intended ERISA to allow one spouse to recover benefits after intentionally killing the other spouse. *Id.* Neither Virginia's slayer statute nor federal common law allow Riner to recover the deceased's ERISA benefits.

## IV

Riner presents two additional arguments. First, he argues that Connecticut General admitted Mrs. Riner's death was "accidental" when it paid $100,000 into court. Therefore, the company has waived any right to argue that Mrs. Riner's death was *not* an accident or, in other words, that Riner's conviction for intentionally killing his wife bars him from receiving the proceeds of the policy.

■ Riner analyzes the phrase "accidental death" from the wrong perspective. When an insurance policy provides for double indemnity upon loss of life by "accidental" means, the relevant inquiry considers the actions of the deceased. *See, e.g., Tucker v. Life Ins. Co. of Va.*, 228 Va. 55, 321 S.E.2d 78, 81–83 (1984) (applying the "generally upheld" principle that an insured's death is not "accidental" when the insured provokes or instigates the act resulting in death). For example, if Mrs. Riner had committed suicide, then her death would not have been accidental. *See Fairfax County Fire & Rescue Servs. v. Newman*, 222 Va. 535, 281 S.E.2d 897, 901 (1981) (recognizing suicide as a defense to an accident policy). Connecticut General's recognition that Mrs. Riner's death was accidental under the policy is irrelevant to the question of whether Riner may recover the proceeds of that policy.

■ Second, Riner contends that "this court would not allow the constitutional, procedural, and evidentiary errors" that allegedly occurred at his state trial. (Mot. Opp'n 17.) Construed liberally, this argument is a request for an independent determination in this court that Riner did not, in fact, murder his wife.

That question is identical to the one heard and determined in Riner's state criminal prosecution, and "no sound reason is perceived why [he] should be permitted to reopen it and avoid the legal effect of that judgment by such a collateral attack upon it." *Eagle, Star & British Dominions Ins. Co. v. Heller*, 149 Va. 82, 140 S.E. 314, 319 (1927); *see also Graves v. Associated Trans., Inc.*, 344 F.2d 894, 899–900 (4th Cir.1965). Holding a civil trial to resolve an already answered question would be an unnecessary expenditure of judicial resources. Riner's conviction in state court is conclusive on the issue of his entitlement to the decedent's insurance proceeds; no civil trial need be held. *See Prudential Ins. Co. of Am. v. Tull*, 532 F.Supp. 341, 342 (E.D.Va.1981).

## V

Finally, Riner has asked the court to stay this case pending possible habeas corpus relief. He has yet to file any state or federal post conviction petitions, but intends to do so.

Virginia's slayer statute defines a slayer as one who is "convicted" of the murder of the decedent. Va.Code Ann. § 401(1). "Convicted" in this context means a "final conviction." *Prudential Ins. Co. of Am. v. Tull*, 524 F.Supp. 166, 170 (E.D.Va.1981). Once the Virginia Supreme Court resolves a defendant's petition for writ of error, in those cases where one has been filed, that defendant "stands fully 'convicted' under Virginia law." *Tull*, 532 F.Supp. at 342–43; *see also Tull*, 524 F.Supp. at 168–70 (citing *Smith v. Commonwealth*, 134 Va. 589, 113 S.E. 707 (1922) and *White v. Commonwealth*, 79 Va. 611 (1884)).

■ Although the Virginia courts have not specifically decided whether a defendant in the process of seeking habeas relief has been "convicted," the Supreme Court of Georgia has. *See Slakman v. Cont'l Cas. Co.*, 277 Ga. 189, 587 S.E.2d 24 (2003). Georgia's slayer statute applies to those against whom there has been "a judicial finding of guilt not reversed or otherwise set aside." Ga.Code Ann. § 33–25–13 (2003). The Supreme Court of

Georgia held that, under Georgia's slayer statute, the defendant does not have "the right to exhaust every potential collateral challenge to a criminal conviction." *Slakman*, 587 S.E.2d at 26. The court explained, "[c]ollateral challenges, such as habeas corpus, are not part of the criminal proceeding but are intended to provide an avenue for upsetting judgments that have otherwise become final." *Id.* This rationale expresses the well-established rule of law that habeas corpus is a civil and not a criminal proceeding, and is a challenge to the prisoner's detention, rather than a continuation of the criminal prosecution. *See, e.g., Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Smyth v. Godwin*, 188 Va. 753, 51 S.E.2d 230, 233 (1949). Should the Virginia Supreme Court ever consider this issue, it likely would reach the same conclusion as the Georgia court—a defendant is "convicted," at the latest, upon the completion of direct appeals.

 Riner has been convicted of the murder of his wife and his conviction has been affirmed on appeal. To further delay application of the slayer statute—or its analogous federal common law principle—pending theoretical future events is not warranted. It is true that at some indefinite time in the future Riner might possibly obtain a new trial and be acquitted of the murder. However, to delay the clear application of the law based on those mere possibilities would be an injustice to Varner.

VI

For these reasons, the Motion for Summary Judgment by Robert Ray Varner III will be granted and final judgment entered.