Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Carrico and Lacy, S.JJ.


ABIGAIL R. BELL, BY HER NEXT FRIEND, LISA BELL

v.  Record No. 101004    OPINION BY JUSTICE DONALD W. LEMONS
                                      September 16, 2011
JORDAN REBEKAH LYNN CASPER, BY HER NEXT FRIEND, ESTHER M. CHURCH, ET AL.

JORDAN REBEKAH LYNN CASPER, BY HER NEXT FRIEND, ESTHER M. CHURCH

v.  Record No. 101012

CLAYTON DEVOY LYNN, ET AL.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

In these appeals arising out of two cases consolidated in the Circuit Court of Henrico County (the "trial court"), we consider whether the trial court erred when it held that the provisions of Code §§ 55-401 et seq. (Virginia's "Slayer Statute"), in effect on the date of the decedent's death, govern the distribution of the decedent's estate in this case.

I. Facts and Proceedings Below[1]

Sometime between June 29 and July 11, 2005, Collette Lynn Lockard ("Lockard") was shot and killed by her only child, Clayton Devoy Lynn ("Lynn") in Henrico County.  On the date of her death, Lockard was survived by Lynn, Lynn's daughters,

---

[1] All material facts were undisputed and stipulated to by all parties in a Consent Order entered by the trial court on October 26, 2009.

Abigail R. Lynn Bell ("Bell") and Jordan Rebekah Lynn Casper[2] ("Casper"), and her mother, Lena Rhelda Sanders-Howerton ("Lockard's mother").  Lockard's will identified Lynn as the sole beneficiary of her estate, and identified no further beneficiaries in the event that Lynn predeceased Lockard. However, in June 2009, Lynn pled guilty and subsequently was convicted of second degree murder for killing Lockard.

Thereafter, Bell, a minor child, brought an action by her mother and next friend, Lisa Bell, seeking declaratory judgment that Lynn, her biological father, be declared a "slayer" for purposes of the Slayer Statute and that she and Casper be declared the sole heirs of Lockard's estate.  Casper, also a minor child, filed her own declaratory judgment action by her next friend, Esther M. Church, seeking identical relief.  The two actions were consolidated for trial by order of the trial court in October 2009.

Code §§ 55-401 through -415[3] prevent Lynn, as Lockard's "slayer," from receiving any property or benefit from Lockard's estate and the parties do not contend otherwise.  Specifically, Code §§ 55-401 and -402 prohibit a "slayer," or one "who is

---

[2] Bell does not concede that Casper is in fact Lynn's biological daughter, but any dispute regarding this matter is irrelevant given our opinion in this case.

[3] Former Code §§ 55-401 through -406, -411, and -414 (2003) were amended and reenacted in 2008.  See 2008 Acts chs. 822, 830.

convicted of the murder" of the decedent, from acquiring "any property or . . . any benefits as the result of the death of the decedent."  The parties disagree, however, regarding who stands to inherit Lockard's estate.

Former Code § 55-402 (2003), in effect at the time of Lockard's death provided that "[n]either the slayer nor any person claiming through him shall in any way acquire any property or receive any benefits as the result of the death of the decedent."  (Emphasis added.)  However, the General Assembly amended the Slayer Statute in 2008, after Lockard's death but prior to Lynn's conviction of her murder, to provide that "[a]n heir or distributee who establishes his kinship to the decedent by way of his kinship to a slayer shall be deemed to be claiming from the decedent and not through the slayer." Code § 55-403 (emphasis added).

Bell and Casper argued that the 2008 version of the Slayer Statute governs the distribution of Lockard's estate because the Slayer Statute only applies once someone is determined to be a "slayer" as a result of his conviction of the murder of the decedent.  Accordingly, Bell and Casper argued that they are the rightful beneficiaries of Lockard's estate because, under the 2008 version of the Slayer Statute, they may take directly from Lockard, and not through Lockard's "slayer," Lynn.  To the contrary, Lockard's mother argued that the

3

version of the Slayer Statute in effect at the time of Lockard's death governs the distribution of Lockard's estate in this case and, as a result she is the rightful beneficiary of Lockard's estate, according to the laws of intestate succession in effect at the time of Lockard's death.

Upon the parties' respective pleadings, memoranda of law and argument of counsel, the trial court held that Lockard's mother is the sole and rightful heir to Lockard's estate. Specifically, the trial court concluded that the version of the Slayer Statute in effect on the date of Lockard's death governs the distribution of her estate, and "[a]lthough the conviction of murder designates the killer to be the 'Slayer,' it logically follows that he is determined to be the 'Slayer' at the time of the killing." Accordingly, the trial court held that, because Bell and Casper could only inherit from Lockard through Lynn, according to the 2005 version of the Slayer Statute, "the statutory scheme of intestate succession – as modified by the 2005 'Slayer Statute' – precludes them from taking anything . . . from [Lockard's] Estate." Therefore, the trial court held that "the estate passes to the next living person who is neither the Slayer nor making a claim through the Slayer – in this case, [Lockard's mother]." Bell and Casper timely filed their notices of appeal and we granted appeals on the following assignments of error:

4

For <u>Bell</u>, Record No. 101004:

1. The trial court committed reversible error in finding that Clayton Lynn is determined to be the "Slayer" as of the time of the killing in 2005 in contradiction to the express language of the Virginia Slayer Statutes and thereupon ruling that Ms. Sanders-Howerton is the sole and rightful heir to the estate of the decedent and that the petitioners herein have no valid rights or claims with respect to the decedent's estate.

2. The trial court committed reversible error in finding that the provisions of the Virginia Slayer Statutes (Virginia Code Ann. § 55-401 et seq.) in effect on the date of the decedent's death in 2005 control the rights of the parties in these proceedings and thereupon ruling that Ms. Sanders-Howerton is the sole and rightful heir to the estate of the decedent and that the petitioners herein have no valid rights or claims with respect to the decedent's estate.

3. The trial court committed reversible error in failing to reconcile the conflicting provisions of the Virginia Slayer Statutes, § 55-401, et seq., with the Virginia Anti-Corruption of Blood Statute, § 55-4.

For <u>Casper</u>, Record No. 101012:

1. The trial court erred in finding that the 2005 Virginia Slayer Act governs the distribution of the decedent's estate, given that the Act has always defined a slayer in plain language as anyone who is convicted or judicially determined to have committed certain acts resulting in the death of the decedent, and the statute was not triggered until June 2009 when the decedent's murderer pleaded guilty to her homicide.

2. The trial court erred by not reconciling the inherent conflict between the Anti-Corruption of Blood Statute, Virginia Code § 55-4, and the Virginia Slayer Act in favor of the minor children.

5

II. Analysis

A. Standard of Review

Whether the version of the Slayer Statute in effect at the time of Lockard's death in 2005, or the amended 2008 version in effect at the time of Lynn's conviction, is applicable to the facts of this case is a question of statutory interpretation. Accordingly, it "'presents a pure question of law and is . . . subject to de novo review by this Court.'" Warrington v. Commonwealth, 280 Va. 365, 370, 699 S.E.2d 233, 235 (2010) (quoting Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008)).

As with any question of statutory interpretation, our primary objective is " 'to ascertain and give effect to legislative intent,' " as expressed by the language used in the statute. Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011) (quoting Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)). Additionally, " '[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language.' " Ford Motor Co. v. Gordon, 281 Va. 543, 549, 708 S.E.2d 846, 850 (2011) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)).

## B. Virginia's Slayer Statute

This Court previously has discussed the purposes of the Slayer Statute, including the General Assembly's "legislative recognition of a broad public policy against the acquisition of property rights by murder," a policy which is in complete agreement with the "common law maxim of ancient vintage, viz., that no person should be permitted to profit by his own wrong." Sundin v. Klein, 221 Va. 232, 235-36, 269 S.E.2d 787, 788-89 (1980). See Code § 55-414. Irrespective of which version of the Slayer Statute applies, Lynn, as Lockard's "slayer," is prohibited from receiving any property or benefit from Lockard's estate.

Because Lockard's will identified Lynn as the sole beneficiary of her estate, and identified no further beneficiaries in the event that Lynn predeceased Lockard, Lockard's will lapsed. The laws of intestate succession in effect at the time of Lockard's death in 2005 govern the distribution of her estate. See McGehee v. Edwards, 268 Va. 15, 20, 597 S.E.2d 99, 102 (2004); McFadden v. McNorton, 193 Va. 455, 457, 69 S.E.2d 445, 446 (1952); Mott v. Nat'l Bank of Commerce, 190 Va. 1006, 1011, 59 S.E.2d 97, 100 (1950). See also Schilling v. Schilling, 280 Va. 146, 150, 695 S.E.2d 181, 183 (2010). The determinative issue in this case is whether the version of the Slayer Statute in effect on the date of

Lockard's death in 2005 or the version in effect on the date of Lynn's conviction in 2008 controls. If the version in effect in 2005 controls, Lockard's mother stands to inherit Lockard's estate. Former Code § 55-402 (2003); Code § 64.1-1. If the amended 2008 version of the Slayer Statute controls, Bell and Casper stand to inherit Lockard's estate. Code § 55-403.

Bell and Casper argue that Code § 55-401, in defining a "slayer" as someone convicted of murder, dictates that the Slayer Statute has no application in determining who inherits the Decedent's estate until someone has been judicially determined to be a "slayer" for purposes of the statute. Accordingly, they argue that the version of the Slayer Statute in effect on the date of the slayer's conviction controls any distribution of the decedent's estate affected by application of the Slayer Statute.

To the contrary, Lockard's mother contends that the trial court correctly concluded that the distribution provisions of the version of the Slayer Statute in effect on the date of Lockard's death, "like all laws related to the distribution of property under Virginia's testacy and intestacy statutes," control the distribution of Lockard's estate.

As it existed at the time of Lockard's death in 2005, the Slayer Statute defined "Slayer," in relevant part, as any person "who is convicted of the murder of the decedent."

8

Former Code § 55-401 (2003).[4]  Bell and Casper mistakenly rely upon Prudential Ins. Co. of America v. Tull, 524 F. Supp. 166, 171 (E.D. Va. 1981), for the proposition that the Slayer Statute becomes applicable in determining the rights of those who stand to inherit from a decedent only after the judicial determination has been made in accordance with Code § 55-401.

In Tull, the United States District Court for the Eastern District of Virginia considered the application of the Slayer Statute to a person who had been convicted of murder but whose appeal had not yet been resolved by the Supreme Court of Virginia.  Tull, 524 F. Supp. at 168-71.  In the case before us, the conviction is final, and the issue is whether such an adjudication is effective upon the date of the death of the decedent or upon the date of adjudication of the slayer.  We agree with the trial court that "[a]lthough the conviction of murder designates the killer to be the 'Slayer,' it logically follows that he is determined to be the 'Slayer' at the time of the killing."

Virginia has long recognized that the law in existence on the date of a decedent's death governs the distribution of the

---

[4] While inapplicable to the facts of this case, the Slayer Statute also included in the definition of "Slayer," any person who, "in the absence of such conviction . . . who is determined by a court of appropriate jurisdiction by a preponderance of the evidence to have murdered the decedent."  Former Code § 55-401 (2003).

9

decedent's estate. See McGehee, 268 Va. at 19, 597 S.E.2d at 102 (recognizing that "the interests of beneficiaries accrue at the testator's death"); McFadden, 193 Va. at 457, 69 S.E.2d at 446 (recognizing that "the right of an adopted child to inherit is to be determined by the law in force at the death of the person from whom the inheritance is claimed."); Mott, 190 Va. at 1011, 59 S.E.2d at 100 (stating that "[t]he answer . . . as to who were the heirs at law of [the decedent] is to be found in the statutes of descents and distributions as supplemented by the adoption laws in force at the time of his death."). See also Schilling, 280 Va. at 150, 695 S.E.2d at 183 (declaring that "a determination whether a writing offered for probate is a valid will applies the law in effect on the date of the maker's death.").

The Slayer Statute's historical placement in the Virginia Code is instructive. Virginia's first Slayer Statute was enacted as section 5274 of the Code of 1919. See Life Ins. Co. of Virginia v. Cashatt, 206 F. Supp. 410, 412 (E.D. Va. 1962). Within the Code of 1919, the Slayer Statute was in Title 46, Chapter 213, entitled "Descents and Distribution." Former Code § 5274 (1919). Upon enactment of the Code of 1950, the Slayer Statute was included in Title 64, Chapter 1, again entitled "Descent and Distribution." Former Code § 64-18 (1950). Only when a more comprehensive Slayer Statute was enacted in 1981 –

which applied to potential acquisitions of property by a slayer in addition to those related to life insurance, wills, or intestacy – was the statute moved to Title 55, entitled "Property and Conveyances." Former Code §§ 55-401 et seq. (1981). However, the fact that the Slayer Statute is now placed in Title 55 does not change its effect upon estate distribution when the decedent has been murdered by a potential heir or legatee.

Significantly, the version of the Slayer Statute in effect in 2005, by its own language, explicitly modified distribution of a decedent's estate by providing that "[n]either the slayer nor any person claiming through [the slayer] shall in any way acquire any property or receive any benefits as the result of the death of the decedent, but such property shall pass as provided in the sections following."[5] Former Code § 55-402 (2003) (emphasis added).

The "sections following" former Code § 55-402 (2003) provided both that "[t]he slayer shall be deemed to have predeceased the decedent as to property which would have passed

_____

[5] Additionally, the version of the Slayer Statute in effect in 2005 unequivocally modified several provisions of Title 64.1, including descent and distribution, Code §§ 64.1-01 et seq., the anti-lapse statute, Code § 64.1-64.1, and the Uniform Simultaneous Death Act, Code § 64.1-104.1 et seq. See former Code §§ 55-403, -404, and -415 (2003).

11

from the estate of the decedent to the slayer under the statutes of descent and distribution," and that

> [t]he slayer shall be deemed to have predeceased the decedent as to property which would have passed to the slayer by devise or legacy from the decedent, except that [Code] § 64.1-64.1, preventing lapse of devises or legacies when the person named in the will dies before the testator, shall not apply.

Former Code §§ 55-403 and 55-404 (2003). The clear language of the statutes forecloses the ability of Bell and Casper to inherit Lockard's estate through the slayer. Former Code §§ 55-402, -403, and -404 (2003).

Finally, this Court has recognized "the fundamental principles of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." Berner v. Mills, 265 Va. 408, 413, 579 S.E.2d 159, 161 (2003). See also Schilling, 280 Va. at 149, 695 S.E.2d at 183. Nothing in the amendments to the Slayer Statute made after Lockard's death indicates that the General Assembly intended such amendments to apply retroactively. See 2008 Acts chs. 822, 830.

Accordingly, the Slayer Statute's interplay with Virginia law governing descent and distribution and its longstanding history as a law governing descent and distribution in particular circumstances compel application of Virginia's well-

12

established policy that the law in existence on the date of a decedent's death governs the distribution of the decedent's estate. See McGehee, 268 Va. at 19-20, 597 S.E.2d at 102; McFadden, 193 Va. at 457, 69 S.E.2d at 446; Mott, 190 Va. at 1011, 59 S.E.2d at 100. See also Schilling, 280 Va. at 150, 695 S.E.2d at 183. Consequently, we hold that the version of the Slayer Statute in effect on the date of Lockard's murder in 2005 controls the distribution of Lockard's estate in this case. As a result, we hold that the trial court was correct in concluding that under the laws of intestate succession at the time of Lockard's death in 2005, as modified by the version of the Slayer Statute in effect in 2005, Lockard's estate passes to the next living person who is neither the "slayer" nor making a claim through the "slayer."

## C. Corruption of Blood

Bell and Casper contend that the version of the Slayer Statute in effect at the time of Lockard's death in 2005, if applied in this case, would violate Virginia law prohibiting the "corruption of blood." Contrary to Bell's and Casper's assertions, however, "corruption of blood" and "forfeiture of estate" are not implicated by Virginia's Slayer Statute – even as it existed in 2005.

Code § 55-4 provides that "[n]o suicide, nor attainder of felony, shall work a corruption of blood or forfeiture of

13

estate."  The United States Supreme Court has observed that, at common law, "attainder generally carried with it a 'corruption of blood,' which meant that the attainted party's heirs could not inherit his property."  United States v. Brown, 381 U.S. 437, 441 (1965) (emphasis added).  Similarly, this Court has stated that "corruption of blood and forfeiture of estate on conviction of felony as at common law has been expressly abolished by statute.  So, in Virginia, the right of a person to take, hold and dispose of his property, real and personal, is not affected by his attainder of felony."  Haynes v. Peterson, 125 Va. 730, 734, 100 S.E. 471, 472 (1919) (citation omitted; emphasis added).

Accordingly, the Slayer Statute, as it existed in 2005, does not work a corruption of blood because it does not deprive a "slayer's" heirs the right to inherit from the "slayer" property properly belonging to the "slayer."  Neither does it work a forfeiture of estate because it does not require a "slayer" to forfeit his property.  Rather, former Code § 55-402 (2003) merely prohibited a slayer from acquiring additional property rights as a result of his wrongdoing, which his heirs could subsequently claim "through him."

In fact, we explicitly have held that the Slayer Statute does not violate Code § 55-4 because it "do[es] not deprive the murderer of any property rights, but prevent[s] his acquisition

14

of additional rights by unlawful and unauthorized means."
Sundin, 221 Va. at 240, 269 S.E.2d at 791 (emphasis added).  In so holding, we recognized that "one cannot suffer an unlawful forfeiture of something he has gained contrary to law or the terms of his own undertaking."  Id.  Accordingly, we hold that the version of the Slayer Statute in effect on the date of Lockard's murder in 2005 neither implicates nor violates Virginia's prohibition against "corruption of blood or forfeiture of estate."  Code § 55-4.

III. Conclusion

We hold that the version of the Slayer Statute in effect on the date of Lockard's murder in 2005 controls the distribution of Lockard's estate in this case.  We also hold that the version of the Slayer Statute in effect on the date of Lockard's murder in 2005 neither implicates nor violates Virginia's prohibition against "corruption of blood." Accordingly, we will affirm the judgment of the trial court.

Affirmed.